**2023-1446, -1450, -2148 and -2149**

IN THE

# United States Court of Appeals

## FOR THE FEDERAL CIRCUIT

❖

FOCUS PRODUCTS GROUP INTERNATIONAL, LLC, ZAHNER DESIGN GROUP, LTD.,
HOOKLESS SYSTEMS OF NORTH AMERICA, INC., SURE FIT HOME PRODUCTS, LLC,
SURE FIT HOME DECOR HOLDINGS CORP., SF HOME DECOR, LLC,

*Plaintiffs-Appellees,*

—v.—

KARTRI SALES CO., INC., MARQUIS MILLS, INTERNATIONAL, INC.,

*Defendants-Appellants.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
JUDGE PAUL A. ENGELMAYER
1:15-CV-10154-PAE

## CORRECTED BRIEF FOR PLAINTIFFS-APPELLEES

MORRIS E. COHEN
LEE A. GOLDBERG
GOLDBERG COHEN, LLP
1350 Avenue of the Americas, 3rd Floor
New York, New York 10019
(646) 380-2087

DONALD RHOADS
RHOADS LEGAL GROUP PC
100 Park Avenue, Suite 1600
New York, New York 10017
(917) 297-9852

*Attorneys for Plaintiffs-Appellees*

### U.S. Patent No. 6,494,248 B1

1.    A product comprising:

an item for hanging, said item comprising an opening for suspending said item from a rod, said item comprising a ring attached to said opening such that said opening is reinforced by said ring, said ring comprising an inner circumference, said inner circumference comprising a top when said item is hanging, said item comprising an upper edge, said item comprising a slit extending from said upper edge through said ring to said opening, said slit intersecting said inner circumference of said ring at a point offset from said top, said slit further comprising an approximately horizontal component when said item is hanging from the rod.

### U.S. Patent No. 7,296,609 B2

1.    A product, said product comprising:

a curtain, said curtain comprising a ring, said ring comprising an outer circumference;

said curtain comprising an opening such that said curtain is suitable for suspension from a rod;

said ring comprising a slit extending through said ring to said opening;

wherein said ring comprises a projecting edge, said projecting edge being an edge which projects from said outer circumference of said ring,  and wherein said projecting edge is provided next to said slit.

### U.S. Patent No. 8,235,088 B2

1.    A product, said product comprising:

a shower curtain, said shower curtain comprising an outer edge and an opening such that said product is suitable for suspension from a rod, said shower curtain further comprising a ring, wherein said ring reinforces said opening;

said ring comprising a flat upper edge, an inner circumference, and an outer circumference;

said ring further comprising a slit extending from said inner circumference through said ring and through said outer edge of said shower curtain;

said ring further comprising a projecting edge, said projecting edge being an edge which projects from said outer circumference of said ring; and,

wherein said slit exits said inner circumference at a location which is offset from the 12 o'clock position on said inner circumference.

# CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellants certifies the following:

1. The full name of the parties represented by me:

> **Focus Products Group International LLC;**
>
> **Zahner Design Group Ltd.;**
>
> **Hookless Systems of North America, Inc.;**
>
> **SF Home Décor LLC;**
>
> **Sure Fit Home Décor Holdings Corp.; and**
>
> **Sure Fit Home Products LLC.**

2. Name of real-party-in-interest represented by me:

> **Same.**

3. Parent corporations and publicly held companies that own 10% or more of stock in the party:

> **For Sure Fit Home Products, LLC: parent is SF Home Décor LLC.**
>
> **For Sure Fit Home Décor Holdings Corp.: parent is Keeco LLC.[1]**
>
> **For SF Home Décor LLC: parent is Keeco, LLC (see also n.2)**
>
> **For Hookless Systems of North America, Inc.: parent is Zahner Design Group, Ltd.**
>
> **For Zahner Design Group, Ltd.: None.**

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an

---

[1] Keeco LLC acquired Hollander Sleep Products LLC, who had previously acquired Sure Fit Home Décor Holdings Corp., who was the parent of SF Home Décor LLC.

appearance in this case) are:

**Morris E. Cohen\*; Lee A. Goldberg; Limor Wigder; of Goldberg Cohen LLP;**

> \*Mr. Cohen is also an Adjunct Professor at the Benjamin N. Cardozo School of Law (1996-present), but is appearing solely on behalf of his law firm and not the law school or any clinics.

**Donald Rhoads of the Rhoads Legal Group P.C.**

5.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b):

**Keeco LLC v. Kartri Sales Company, Inc., SDNY Civil Action No. 1:23-cv-02003 (PAE)**

6.    Pursuant to Fed. Cir. Rule 47.4(6), all information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases.
Per F.R.App.P. 26.1 (b):  Organizational Victims in Criminal Cases. In a criminal case, unless the government shows good cause, it must file a statement that identifies any organizational victim of the alleged criminal activity. If the organizational victim is a corporation, the statement must also disclose the information required by Rule 26.1(a) to the extent if can be obtained through due diligence.

**None (and Not Applicable).**

Per F.R.App.P. 26.1 (c):  Bankruptcy Cases. In a bankruptcy case, the debtor, the trustee, or, if neither party, the appellant must file a statement that: (1) identifies each debtor not named in the caption; and, (2) for each debtor that is a corporation, discloses the information required by Rule 26.1(a).

**None (and Not Applicable).**

Dated: April 29, 2024           */s/ Morris E. Cohen*
                                Morris E. Cohen
                                Lee A. Goldberg

GOLDBERG COHEN LLP

1350 Avenue of the Americas, 3rd Flr.

New York, New York 10019

(646) 380-2087 (phone)

(646) 514-2123 (fax)

MCohen@GoldbergCohen.com

LGoldberg@GoldbergCohen.com

Donald L. Rhoads

Rhoads Legal Group PC

100 Park Avenue, Suite 1600

New York, NY 10017

(212) 390-8510 (phone)

drhoads@rhoadslegal.com

*Counsel for Plaintiffs-Appellees*

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................. ii

TABLE OF AUTHORITIES ............................................................. viii

STATEMENT OF RELATED CASES ................................................... 1

INTRODUCTION ............................................................................. 2

STATEMENT OF THE ISSUES ......................................................... 3

STATEMENT OF THE CASE ............................................................ 5

SUMMARY OF THE ARGUMENT .................................................... 7

ARGUMENT ................................................................................. 11

I.     The Standard Of Review ...................................................... 11

II.    Applicable Procedural Law .................................................. 12

       A.    New Arguments on Appeal are Waived ......................... 12

       B.    Defenses Not Presented Below Were Waived ................. 13

III.   The Record Warranted Attorneys' Fees ................................. 13

       A.    Defendants' Conduct Was Egregious ............................ 13

       B.    The Fee Calculation Was Correct ................................. 16

IV.    The Willfulness Evidence Was Abundant ............................... 18

       A.    Willfulness is a Factual Question ................................. 18

       B.    The Factual Finding Was Well-Grounded ...................... 18

V.     Defendants Infringed The Word Marks ................................. 25

       A.    Kartri Infringed the HOOKLESS® Trademark ............... 25

             1.    HOOKLESS® is a Valid Mark ............................... 25

             2.    Kartri Infringed the HOOKLESS® Mark ................. 26

       B.    Plaintiffs Had Standing to Assert the EZ ON Trademark ... 28

VI.    The Defendants Infringed Valid Trade Dress ......................... 29

       A.    The Trade Dress is Strong ......................................... 29

B.  The Trade Dress is Nonfunctional ....................................30

1.  Defendants Submitted No Relevant Functionality Facts..........30

2.  They Waived Their New Arguments ........................................31

3.  The New Arguments Are Also Meritless ................................31

C.  The Trade Dress is Not Generic ..........................................35

1.  Kartri Forfeited a Genericism Defense ....................................35

2.  Marquis's Arguments are Meritless..........................................35

3.  Kartri Identifies No Evidence that the Finding is Erroneous ...36

D.  The Patents Do Not Invalidate the Trade Dress................................38

1.  Kartri Waived its New Arguments on Appeal..........................38

2.  The Patents and Trade Dress are Factually Separate...............38

3.  Patents and Trade Dress are Legally Distinct Regimes............39

4.  Kartri's Position is Also Inequitable........................................42

E.  Kartri Infringed the Trade Dress ........................................45

VII.  Venue Was Proper.....................................................................46

A.  Defendants Waived Any Objections ..................................46

1.  Karti Dallied................................................................46

2.  It Sued ..........................................................................49

3.  It Forfeited....................................................................49

VIII.  Every Disputed Patent Limitation Was Addressed .....................51

A.  The Three Patents ...............................................................51

B.  The Reconsideration/Clarification Motion .........................52

IX.  The Court Properly Construed The Patents ................................52

A.  The '248 Patent ...................................................................52

1.  The "Approximately Horizontal" Limitation ..........................52

i.  Defendants Waived Their Position................................52

ii.  Defendants' Position is Meritless ................................54

2. The "Ring" Limitation ................................................................56

    i. Defendants Waived Their Position..................................56

    ii. Marquis Contradicts Itself .............................................56

    iii. Marquis's Position is Also Meritless............................58

3. The Exiting of the Slit at the Upper Edge................................61

    i. Marquis Waived Its New Arguments .............................62

    ii. Its Arguments are Also Meritless ..................................62

4. The "Slit Extending From Said Upper Edge"...........................63

B. The '609 Patent ..................................................................................63

1. The "Projecting Edge" Limitation .............................................63

2. The "Ring" Limitation ...............................................................67

3. The "Next to Said Slit" Limitation ...........................................67

C. The '088 Patent ..................................................................................69

1. The "Projecting Edge" Limitation .............................................69

X. Marquis's Unclean Hands Allegation Is Meritless .....................................71

CONCLUSION ..............................................................................................................74

CERTIFICATE OF COMPLIANCE ...........................................................................75

# TABLE OF AUTHORITIES

## Cases

*20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*,
  815 F.2d 8 (2nd Cir. 1986) .................................................................44

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*,
  930 F.3d 1314 (Fed. Cir. 2019) ......................................................32

*Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*,
  592 F.3d 1340 (Fed. Cir. 2010) ......................................................72

*Bonito Boats v. Thunder Craft Boats*,
  489 U.S. 141, 109 S. Ct. 971 (1989) ............................................41

*Bonworth, Inc. v. Runway 7 Fashions, Inc.*,
  2023 U.S. Dist. LEXIS 139135 (S.D.N.Y. June 20, 2023)...........49

*Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*,
  834 F.2d 1142, 1148 (2d Cir. 1987) ..............................................33

*Cai v. Diamond Hong, Inc.*,
  901 F.3d 1367 (Fed. Cir. 2018) ......................................................24

*Chamberlain Grp. v. Techtronic Indus. Co.*,
  935 F.3d 1341 (Fed. Cir. 2019) ......................................................48

*Colorado v. New Mexico*,
  467 U.S. 310 (1984).........................................................................74

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Access., Inc.*,
  942 F.3d 1119 (Fed. Cir. 2019) ......................................................46

*Courtenay Communs. Corp. v. Hall*,
  334 F.3d 210 (2d Cir. 2003) ...........................................................36

*Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*,
  631 F.3d 42 (2d Cir. 2011) .............................................................11

*Duncan Parking Techs., Inc. v. IPS Grp., Inc.*,
  914 F.3d 1347 (Fed. Cir. 2019) ......................................................55

*Gilead Scis., Inc. v. Merck & Co.*,

    888 F.3d 1231 (Fed. Cir. 2018) ....................................................72

*Gruner + Jahr USA Publ'g v. Meredith Corp.*,

    991 F.2d 1072 (2d Cir. 1993) ......................................................27

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*,

    826 F.3d 27 (2d Cir. 2016) ..........................................................28

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,

    579 U.S. 93 (2016)............................................................... 12, 25

*Hubbell Inc. v. Pass & Seymour, Inc.,*

    883 F. Supp. 955 (S.D.N.Y. 1995) ..............................................40

*Hupp v. Siroflex of Am., Inc.*,

    122 F.3d 1456 (Fed. Cir. 1997) ...................................................33

*In re Fedex Corp.*,

    2018 U.S. App. LEXIS 32304 (Fed. Cir. Jan. 23, 2018)..............48

*In re Hughes Network Sys., LLC,*

    2017 U.S. App. LEXIS 13674 (Fed. Cir. July 24, 2017) ....... 47, 48

*In re Mavety Media Group, Ltd*.,

    33 F.3d 1367 (Fed. Cir. 1994) ....................................................36

*In re Micron Tech., Inc.*,

    875 F.3d 1091 (Fed. Cir. 2017) ...................................................46

*In re Mogen David Wine Corp.*,

    328 F.2d 925 (C.C.P.A. 1964)......................................................39

*In re Oath Holdings Inc.*,

    908 F.3d 1301 (Fed. Cir. 2018) ...................................................48

*Kohler Co. v. Moen, Inc.*,

    12 F.3d 632 (7th Cir. 1993) .........................................................40

*Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*,

    2015 U.S. Dist. LEXIS 106515 (D. Del. Aug. 13, 2015)..............46

*Krueger Int'l, Inc. v. Nightingale Inc.*,
915 F. Supp. 595 (S.D.N.Y. 1996) .................................................................39

*Lane Capital Mgmt. v. Lane Capital Mgmt.*,
192 F.3d 337 (2d Cir. 1999) .........................................................................36

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
799 F.2d 867 (2d Cir. 1986) .........................................................................28

*Lon Tai Shing Co., LTD. v. Koch & Lowy*,
1990 U.S. Dist. LEXIS 19123 (S.D.N.Y. Dec. 14, 1990)...................... 33, 40

*Madey v. Duke Univ.*,
307 F.3d 1351 (Fed. Cir. 2002) ....................................................................12

*Mass. Inst. of Tech. v. Shire Pharm., Inc.*,
839 F.3d 1111 (Fed. Cir. 2016) ....................................................................58

*Nora Bevs., Inc. v. Perrier Grp. of Am. Inc.*,
164 F.3d 736 (2d Cir. 1998) .........................................................................36

*Norton v. Sam's Club*,
145 F.3d 114 (2d Cir. 1998) .........................................................................31

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014).......................................................................................12

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
317 F.3d 209 (2d Cir. 2003) .........................................................................14

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ....................................................65

*Pillars v. GM LLC (In re Motors Liquidation Co.)*,
957 F.3d 357 (2d Cir. 2020) .........................................................................57

*Plantronics, Inc. v. Aliph, Inc.*,
724 F.3d 1343 (Fed. Cir. 2013) ....................................................... 58, 59, 61

*Playboy Enters. Inc. v. Chuckleberry Pub'g, Inc.*,
687 F.2d 563 (2d Cir. 1982) .........................................................................20

*Polara Eng'g, Inc. v. Campbell Co.*,
    894 F.3d 1339 (Fed. Cir. 2018) ...................................................18

*Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*,
    946 F.2d 870 (Fed. Cir. 1991) .....................................................72

*Qualitex Co. v. Jacobson Prods. Co.*,
    514 U.S. 159 (1995)......................................................................41

*RJR Foods, Inc. v. White Rock Corp.*,
    603 F.2d 1058 (2nd Cir. 1979) ....................................................44

*Romag Fasteners, Inc. v. Fossil Grp., Inc.*,
    140 S. Ct. 1492 ............................................................................25

*Rosco, Inc. v. Mirror Lite Co.*,
    2003 U.S. Dist. LEXIS 26209 (E.D.N.Y. July 8, 2003) ..............24

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007).......................................................................25

*SciMed Life Sys. v. Advanced Cardiovascular Sys.*,
    242 F.3d 1337 (Fed. Cir. 2001) ...................................................67

*Singleton v. Wulff*,
    428 U.S. 106 (1976).....................................................................12

*Sulzer Mixpac AG v. A&N Trading Co.*,
    988 F.3d 174 (2d Cir. 2021) ................................................. 30, 32

*Suprema, Inc. v. ITC*,
    626 F. App'x 273 (Fed. Cir. 2015) ..............................................18

*Sure Fit Home Prods., LLC v. Maytex Mills, Inc.*,
    2023 U.S. Dist. LEXIS 98884 (S.D.N.Y. May 16, 2023) ............33

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    581 U.S. 258 (2017)........................................................ 46, 48, 50

*Texas v. Penguin Grp. (USA), Inc. (In re Elec. Books Antitrust Litig.)*,
    2014 U.S. Dist. LEXIS 57414 (S.D.N.Y. Apr. 24, 2014) ............50

*Therasense, Inc. v. Becton, Dickinson & Co.*,

    649 F.3d 1276 (Fed. Cir. 2011) (en banc) ............................................. 72, 73

*TrafFix Devices v. Mktg. Displays*,

    532 U.S. 23 (2001)................................................................................... 41, 42

*United States v. Aluminum Co. of Am.*,

    148 F.2d 416 (2nd Cir. 1945).........................................................................44

*United States v. Braunig*,

    553 F.2d 777 (2d Cir. 1977) .........................................................................12

*Vitronics Corp. v. Conceptronic, Inc.*,

    90 F.3d 1576 (Fed. Cir. 1996) ........................................................ 55, 60, 64

*VR Optics, LLC v. Peloton Interactive, Inc.*,

    2023 U.S. App. LEXIS 3678 (Fed. Cir. Feb. 16, 2023).................. 12, 52, 57

*Weinstock v. Columbia Univ.*,

    224 F.3d 33 (2d Cir. 2000) ...........................................................................12

## Other Authorities

*What Every Business Executive Knows About Obtaining and Using Patent Opinions, Intellectual Property Today,* June 2009................................................24

## Treatises

5 McCarthy § 30:62 .................................................................................................25

## STATEMENT OF RELATED CASES

Besides the proceedings identified by Defendants, Kartri filed an *ex parte* reexamination of the '248 Patent (Reexamination 90/013,779), and both filed an *Inter Partes Review* of the '088 Patent (IPR2016-01327).

In both proceedings, the PTAB upheld the validity of the patents, and Defendants did not appeal.

# INTRODUCTION

David Zahner embodied the American Dream.  He innovated and overcame failure to achieve success.

Kartri was invited to join him at the start, but refused.  Undeterred, Zahner and affiliates toiled 17 years until his HOOKLESS® products rose from obscurity to become the #1 hotel ("hospitality") shower curtain nationwide.

Kartri then realized it bet wrong.  So Defendants copied Zahner, exploiting his efforts rather than promoting Kartri's own patented design.

Since 2015, Plaintiffs have battled to seek redress from these willful infringers.  All the while, Defendants engaged in "multi-faceted and protracted litigation misconduct" (Appx389) – even giving false testimony and sales numbers at trial.  Zahner's dream became the American Nightmare.

Defendants ignore this history, seeking to start from scratch.  They attack just and thorough rulings which the court based on a compelling record and well-established law.  They disregard the high abuse of discretion and clear error standards of review.  They assert waived defenses and materials not in evidence.

But appeals are not "do-overs."  And Defendants cannot obfuscate the meritless nature of their positions.

# STATEMENT OF THE ISSUES

*Waiver*

1.    Are arguments and evidence waived if not presented below?

(Section II).

*Attorneys' Fees*

2.    Was it an abuse of discretion to award partial fees for Defendants'

litigation misconduct, willful infringement, and frivolous positions?

(Section III).

*Willfulness*

3.    Was the willfulness finding clearly erroneous?  (Section IV).

*Trademark Validity and Infringement*

4.    Is the HOOKLESS® mark valid and infringed? (Section V.A).

5.    Did Plaintiffs have standing to assert the EZ ON mark in 2015, based

on a 2012 Agreement? (Section V.B).

6.    Were the factual findings of non-functionality and non-genericism

clearly erroneous?  (Sections VI.B-C).

7.    Is the Trade Dress valid under the court's factual findings?  (Section VI.D).

8.    Did Kartri infringe the Trade Dress? (Section VI.E).

*Venue*

9.    Was it an abuse of discretion to deny Kartri's late venue motion? (Section VII).

*Patent Infringement*

10.    Did Defendants' products, which incorporated every claim limitation (including the few disputed ones) infringe the patents?  (Section VIII).

11.    Did the court properly construe the claims? (Section IX).

*Unclean Hands*

12.    Was it "unclean hands" to file a terminal disclaimer?  (Section X).

## STATEMENT OF THE CASE

Plaintiffs draw primarily from the judicial findings in the court's 168 page post-trial opinion (Appx201-368), which was based on six days of testimony, credibility determinations (Appx202) of 14 witnesses (Appx3780-4837), and a review of hundreds of exhibits (Appx202).

### *History*

David Zahner received the '232 Patent on his horizontal slit curtain in 1992. Appx215-216.  His company Zahner Design Group ("ZDG") tried selling it for years, but failed.  Appx216.  So he formed Hookless Systems of North America ("HSNA") with two partners.  *Id.*  HSNA pitched Zahner's design to Kartri, but Kartri rejected it.  *Id.*; Appx277.

HSNA (including licensees Arcs and Angles, Inc., and Focus) then invested years promoting their products.  Appx223-227.  Ultimately, HOOKLESS® became the #1 shower curtain in hospitality, with half the market (Appx227-228)  and strong secondary meaning (Appx268-279).

Meanwhile, Zahner obtained patents on further design elements.  Defendants challenged his '248 and '088 Patents based on prior art like Silvestre and Lishman, and the PTO rejected those challenges (Appx465-466; Appx1607).  Now, Marquis raises Sharp (p.7), which is not of record in the district court.  This is a pattern – Defendants' briefs repeatedly assert arguments and evidence not raised below.

*Defendants' Conduct*

Kartri had its own patented curtain, and could have promoted it. But Kubus admitted "it really was a flop" (Appx4525, 745:4-7). "I may sell one every month … I didn't put a little time and energy into it and … my marketing isn't strong with it." Appx4526, 746:1-5. Instead, "defendants 'deliberately copied [Focus's] ideas.'" (Appx356). "They were well aware of Focus's innovative product and success" (*id.*), and patents (Appx357), and tried to take advantage.

To wit, defendants willfully infringed (*infra*, Section IV). They then "defended this case in an objectively unreasonable, thoughtless, and unprofessional manner" (Appx383), flagrantly breached their discovery obligations (Appx384-385), repeatedly violated the rules (Appx386-387),[2] flouted or ignored court rulings (Appx387-388), and took baseless positions (Appx388-389). Accordingly, the court properly ruled this an exceptional case warranting fees. Appx392. Likewise, the evidence (Appx7132-7135, Appx7168-7218 (summary slides)) fully supported the Court's extensive post-trial Opinion and earlier decisions on the merits.

---

[2] Even on appeal Defendants originally incorporated each other's briefs by reference, in violation of this Court's rules, to subvert the word limit. They then collaborated and split issues between briefs again to do the same.

## SUMMARY OF THE ARGUMENT

Defendants raise new arguments and "evidence" never raised below, ignore their burdens under the standards of review, interpose attorney argument instead of record evidence, and make assertions unsupported by record or case law citations.

### *Waiver and Forfeiture (Section II)*

Defendants' numerous new arguments, defenses, and counterclaims not raised below were waived.

### *Attorneys' Fees (Section III)*

The well-supported, conservative, fee award was not an abuse of discretion. Defendants infringed willfully, asserted meritless positions, and engaged in litigation misconduct, including offering false testimony and sales data at trial.

### *Willfulness (Section IV)*

The willfulness finding was not an abuse of discretion. Defendants deliberately imitated the Trade Dress, <u>and</u> Plaintiffs' "EZ ON" mark (with "EZY Hang"), <u>and</u> disregarded the patent claims. To ignore Plaintiff's intellectual property, they relied on Middleberg's opinions, though he was ignorant about the law, and made no sense. At trial, Middleberg even admitted he shouldn't have sold the infringements, which Kartri gladly resold.

### *Infringement of the Valid HOOKLESS® Mark (Section V.A)*

Kartri failed to plead invalidity, forfeiting the defense.

On infringement, it ignores <u>six of eight</u> *Polaroid* factors.  The finding of infringement, based on all eight factors, was not clearly erroneous.

### Standing as to the EZ ON Marks (Section V.B)

Plaintiffs had standing to assert the EZ ON mark in 2015.  In a 2012 agreement, Carnation agreed that Plaintiffs would own all intellectual property associated with the licensed product, including the EZ ON mark.

### Trade Dress Validity and Infringement (Section VI)

The court ruled that the Trade Dress is strong, with secondary meaning, i.e., it is a source identifier.  Section VI.A.  Defendants do not challenge this.

On "functionality," Defendants identified no admissible evidence below, warranting summary judgment.  Section VI.B.1.  They also did not raise *TrafFix* arguments, waiving them.  Section VI.B.2.  Nonetheless, the court addressed *TrafFix*.  Section VI.B.3.  And its post-trial factual findings confirmed non-functionality.  *Id.*  Others' products, like the Zenna item, showed that the Trade Dress is not essential, or needed for cost and quality.

Kartri also failed to plead "genericism," waiving it.  Section VI.C.1.  And Marquis does not show it.  Section VI.C.2.  It is also meritless.  Section VI.C.3. Kartri has no evidence that the detailed findings were clearly erroneous.

Kartri's arguments that Trade Dress cannot exist after patents expire is also a new one on appeal, so Kartri waived it.  Section VI.D.

Its position also fails because the Trade Dress is strong and a source-identifier (Section VI.A), which Kartri does not deny.  Indeed, it identifies no *evidence* that the court's facts or resulting conclusions were incorrect.  It relies on attorney argument (based on positions and cases never presented below).  That argument ignores the scope of the patent and Trade Dress claims, and the framework of co-existing legal regimes – one rewards innovation and one rewards successful commercialization.  Kartri is not entitled to create confusion with Plaintiff's products.  That is the *raison d'être* for trademark law.

### *Venue (Section VII)*

Kartri fails to meet the high abuse of discretion standard.  Its venue motion was brought 4 months after *TC Heartland* – far longer than other cases ruled untimely.  Its invocation of the court's jurisdiction and venue also waived any venue objections.  And its demand to throw away eight years of litigation, to start all over again, is outrageous.

### *Patent Infringement and Claim Construction (Sections VIII & IX)*

For the '248 Patent, the disputed limitation was whether Defendants' slit had an "approximately horizontal component."  Section VIII.A.  Defendants met the requirement – their component is even <u>closer</u> to horizontal than the patent's example.

Marquis's new claim construction, that a "ring" cannot have a flat upper edge, was not asserted below, so it was waived. Section IX.A.2. It also contradicts Marquis's prior admissions.

Essentially, Marquis is arguing prosecution disclaimer. Rather than cite supporting statements in the record, its relies on mischaracterizations, muddling the prosecution beyond understanding. With no "clear and unmistakable" disavowal, it injects suppositions on restriction requirements. But *Plantronics* held that ambiguous restrictions cannot limit a broad claim. Indeed, Kartri arrived at the *opposite* conclusion.

For the "slit exits said ring …" limitation, Marquis wants to import a "simultaneously" or "precisely" limitation. Section IX.A.3. That contradicts the file wrapper, and the patent's figures.

Regarding the '609 and '088 Patents, the disputed issues were whether Defendants' products have a projecting edge, and whether it is next to the slit. Section VIII.B. They have both. To evade this, Marquis tries to construe "projecting edge" contrary to the definition in the claims. Section IX.B.1.

Marquis also waived its "next to said slit" arguments (Section IX.B.3), because it did not object to the court's construction below when asked.

The court correctly found patent infringement.

*"Unclean Hands" (Section X)*

Marquis's "defense" requires clear and convincing evidence. But Marquis presented no evidence of intent or materiality – at all. The defense is frivolous.

## ARGUMENT

### I.    The Standard Of Review

Plaintiffs elaborate where Defendants' recitations are incomplete.

*Bench Trial*. "After a bench trial, the court's '[f]indings of fact … must not be set aside unless [they are] clearly erroneous.'" *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (citations omitted). This applies to findings based on witness testimony, or documentary evidence, or inferences from other facts. *Id.* "We are not allowed to second-guess the court's credibility assessments." *Id.* (citations omitted). "Further, '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' … The fact that there may have been evidence to support an inference contrary to that drawn by the trial court does not mean that the findings made are clearly erroneous." *Id.* (citations omitted).

*Summary Judgment*. "Summary judgment is … appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law."

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).

<u>*Trade Dress*</u>.  Factual findings of non-functionality and genericism are

upheld unless they are clearly erroneous.  *Infra*, Sections VI.B1 & VI.C.2.

<u>*Willfulness and Attorneys' Fees*</u>.  Plaintiffs agree regarding the abuse of

discretion standard.  A preponderance of the evidence standard governs enhanced

damages (*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 107 (2016)), and

attorneys' fees (*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S.

545, 557-58 (2014)).

## II.    Applicable Procedural Law

"On procedural issues, this Court follows the rule of the regional circuit,

unless the issue is unique to patent law" (*Madey v. Duke Univ.*, 307 F.3d 1351,

1358 (Fed. Cir. 2002)), i.e., Second Circuit law.

### A.    *New Arguments on Appeal are Waived*

Defendants treat this appeal as a "do-over."  But "where a party has shifted

his position on appeal and advances arguments available but not pressed below …

waiver will bar raising the issue on appeal."  *United States v. Braunig*, 553 F.2d

777, 780 (2d Cir. 1977); *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *VR Optics,*

*LLC v. Peloton Interactive, Inc.*, 2023 U.S. App. LEXIS 3678, *21 (Fed. Cir. Feb.

16, 2023).

### B.    Defenses Not Presented Below Were Waived

Defenses not presented as affirmative defenses or counterclaims below were also waived.  Appx100 (collecting cites).

## III.    The Record Warranted Attorneys' Fees

### A.    Defendants' Conduct Was Egregious

Compelling factors supported the award.  Appx380-392.  For example:

(1) Defendants violated their discovery obligations (Appx384-385), and "admitted the evidence they had willfully denied plaintiffs was 'critical' and 'important to the ultimate truth of this case. … defendants' brazen failure to produce their sales and profit data … stymied plaintiffs in attempting to reliably establish their damages."  Appx385.

(2)    Kartri provided **false sales data** at trial.  *Id.*, n.4.[3]

(3)    Defendants repeatedly proffered false testimony. E.g.:

Kartri's President falsely testified that in 2013 she received copies of Chinese patents to the accused product – when patents didn't exist yet (Appx355 n.88; Appx4451-4452).  She also falsely testified she had no patent experience and never saw a patent before 2013.  In fact, she filed for a patent in 2007, which was issued in 2012 (Appx4451-4454).

---

[3] Kartri does not deny this on appeal, much less show clear error.

Marquis's Middleberg testified in his deposition that he never checked whether he could legally sell the product.  Appx4376-4397 (596:11 – 597:2).  But at trial, he testified he considered the three patents and was "convinced" Defendants did not infringe.  Appx4374-4376 (594:11 – 595:8, 595:24 – 596:2).

Marquis's CEO testified that a financial document was inaccurate (Appx4577, 797:13-20).  After a break to speak with counsel (Appx4581, 801:19-23), he recanted, calling it accurate (Appx4583 803:17-19). Exasperated with his inconsistencies (Appx4584-4585, 804:24-805:13), the court exclaimed: "Does the oath mean anything?"  Appx4585, 805:13.  After alleging he "misspoke," the court admonished him: "Your counsel was the one who asked you these questions. These were not surprise questions." Appx4586, 806:13-18.

These are merely some examples – Defendants were repeatedly impeached at trial.

Such abuses alone warranted fees.  *Patsy's Brand, Inc. v. I.O.B. Realty, Inc*., 317 F.3d 209, 222 (2d Cir. 2003) (affirming award where defendant submitted false evidence at trial).

But the court relied on many further factors.  For example:

(4) Defendants repeatedly violated the Scheduling Order, Federal Rules, ***and*** Court's Rules (Appx386-387);

(5) Defendants repeatedly flouted or ignored court rulings (Appx387-388).

(6) Defendants took baseless positions (Appx388), routinely presenting claims without support. *E.g.*, Appx97 (no evidence of indefiniteness); Appx97-98 (anticipation claim baseless); Appx98-99 (§112 claim lacks any evidence); Appx102 (on EZ ON non-infringement, Defendants "do not cite any evidence"); Appx107 (no evidence on tortious interference and monopoly claims); Appx108 (no evidence on patent misuse claim).

This is "[a] decidedly nonexclusive summary" – "[a] thoroughgoing canvass … would reveal a dismaying collection of unreasonable acts and omissions ill-befitting the standards of this District." Appx384. Plaintiffs chronicled even *more* grounds. *Id.* n.3. "Given defendants' multi-faceted and protracted litigation misconduct, this case easily qualifies as an 'exceptional case' when measured against Lanham Act and Patent Act precedents applying that standard." Appx389.

And this is aside from Defendants' years of willful infringement.

Though Kartri alleges no vexatious strategy (p.56), "Defendants' arguments in opposition largely whitewash or minimize its abusive litigation conduct, in contravention of the formidable record reviewed above." Appx390. And Kartri's defense of "some" non-frivolous positions (p.59) is out of context. "[T]o the extent that Kartri suggests that a party who has engaged in wide and protracted unreasonable litigation conduct cannot be found liable for fees where it can cite examples of defensible conduct, that is wrong. No case applying *Octane* has so

held. … the issue is whether that conduct, *in toto*, rendered the case 'exceptional,' not whether this misconduct was uninterrupted." Appx391.

Defendants' misconduct was rampant. Their trademark "expert" ***was not familiar with the Lanham Act***.[4] And he opined on infringement without addressing ***any*** *Polaroid* factors. Dkt. 326-3 at ¶¶51-61.

Even *after* entry of treble damages, the bad faith persisted. Kartri's counsel tried to mislead Judge Engelmayer by stating that this Court affirmed a ruling that Plaintiffs' Trade Dress is functional. Dkt. 521 at 3 n.2. After Plaintiffs proved that false (Dkt. 526 at 3), Kartri kept peddling the falsehood (Dkt. 524 at 11).

After living with a case for eight years, a court becomes very acquainted with the litigants. Its opinion meticulously weighed the history. Appx380-392. Considering Defendants' volume of bad faith, their attempt to evade the award is frivolous. It is light-years from showing an abuse of discretion.

## B.    The Fee Calculation Was Correct

The court could have awarded all fees ($1,549,544.91; Appx378) under these circumstances. Instead, it conservatively reduced them to $929,126.95 (Appx407).

---

[4] Appx167, 32:7-9 (ruling that "Hatch does not grasp the principles of Section 43(a) of the Lanham Act …"); Dkt 326-2, 395:14-17 ("Q: I am asking you if you know what section 43(a) of the Lanham Act protects against. Hatch: And the answer to that question is I could not cite it exactly"). Hatch could only read from Plaintiffs' expert Roberts' report. *Id.* 395:20-396:6.

Kartri alleges (p.63) the court "inexplicably" reached its finding, harping on 8 pages lacking timekeeper initials (Appx5085-5092) – within 170 (Appx4924-5095). Its "missing documentation" objection is petty. Those 8 pages totaling $41,920 from counsel's old accounting system are immaterial, considering the court's $619,737.96 reduction.

Regarding the new system, "[t]o the very limited extent that defendants challenge the adequacy of the billing records, these challenges fail. With few exceptions, defendants – in assailing these records – do not point to specific line entries as problematic." Appx396. Thus, Kartri waived the right to challenge specific entries on appeal. "And, based on the Court's review, such a challenge could not viably be made. Running 160 pages, plaintiffs' time records specify, for each timekeeper, the date, hours expended, and the nature of the work done … Far from being vague or using improper block-billing, plaintiffs' counsels' time records are commendably detailed – among the most thorough this Court has seen in reviewing fee applications." Appx396; *See also,* Appx4924-5095 (invoices).

Kartri's conclusory rejoinder fails to show clear error. And it disrespects the experience of a seasoned federal judge.

Kartri also ignores the finding that "[t]hese records are notable, too, in that they reflect lean – not excessive – staffing. Such discipline was on display at the bench trial, at which plaintiffs brought two attorneys, far from the size of the trial

teams that the Court commonly observes in connection with bench trials in comparably complex commercial cases." Appx396. Thus, higher fees could have been incurred and awarded.

As to deterrence, Kartri did not raise the argument below (Appx400), so it waived it. Moreover, Kartri undermines itself (pgs.61-62). The court reasoned that treble damages already accounted for deterrence, so it *reduced* fees. Appx400-401. If deterrence doesn't count, Plaintiffs should have received more.

## IV. The Willfulness Evidence Was Abundant

### A. *Willfulness is a Factual Question*

"Willful infringement is a question of fact." *Polara Eng'g, Inc. v. Campbell Co.*, 894 F.3d 1339, 1353 (Fed. Cir. 2018). "[O]ur deferential standard of review … requires us to defer to the [court's] factual findings if supported by substantial evidence." *Suprema, Inc. v. ITC*, 626 F. App'x 273, 282 (Fed. Cir. 2015).

Here the evidence was overwhelming.

### B. *The Factual Finding Was Well-Grounded*

As to trademark rights, an embodiment of Plaintiffs' HOOKLESS® brand product was sold under the sub-brand "EZ ON®" – so Kartri called its product "Ezy Hang." And Defendants' products (top two) are virtually identical to Plaintiffs' (bottom image), other than a nominal slit difference (Appx281):







Even Kartri's Sales Operations Manager Dolph confused the parties' products. Appx289 n.49. And Kartri's President admitted their product looks like Plaintiffs' licensed Carnation one. Appx600-601.

On the trademarks and Trade Dress, Defendants acted in plain bad faith. Appx290-292; Appx277-278 (finding the evidence strongly indicates intentional plagiarism). The court canvassed this at length. *E.g.* Appx231-238. Based on extensive testimony and documents, "the evidence is compelling that defendants, aware of the inroads Focus's innovation had made in the shower curtain market, intentionally sought to mimic Focus's Trade Dress to deceive customers to purchase EZY Hang and thereby capitalize on Focus's goodwill." Appx291.

Tellingly, "Defendants did not offer a benign justification for these similarities … It is unavoidably clear that defendants intentionally, and in bad faith, sought to all-but-replicate the EZ-ON Mark so as to capitalize on competitor Focus' intellectual property and good will. *See, e.g., Playboy Enters. Inc. v. Chuckleberry Pub'g, Inc.,* 687 F.2d 563, 565 (2d Cir. 1982) (affirming finding of bad faith where defendant offered no credible explanation …) … [And] the Court finds that the factor of bad faith cannot be logically cabined to the EZ-ON Mark. Defendants' strategy of deliberate infringement, the Court finds, was holistic." Appx292.

Kartri (p.55) does not rebut that it copied, and tried to deceive customers. Knowing this, it raises red herrings: events after dropping the product. It raises the court's 2020 genericism finding. That was *sua sponte* – Kartri never pled genericism (Appx833-836), and Defendants never argued it (Appx121). A *sua sponte* 2020 issue is no defense to 2013-2018 conduct. And the court later **withdrew** its ruling based on the evidence (Appx120). Judge Schofield's 2021 decision – vacated in 2023 – is likewise irrelevant to Defendants' 2013-2018 state of mind. During the infringement, Kartri had no "notion of a defense." *Halo*, 579 U.S. at 104.

As to patent rights, the court gave Marquis the benefit of the doubt until 2015, finding it was careless (Appx350), and acted "negligently but not willfully" (Appx351); though "Middleberg admittedly sought to capitalize on an early 2014 rumor that 'Focus was in financial trouble'" (*id.*) to exploit Focus's perceived weakness. But "Marquis's claim of ignorance … is unsustainable after February 27, 2015, the date it received Focus's cease and desist letter to Kartri." (Appx352-354) (discussing facts and cases) "Middleberg himself testified that 'in retrospect,' Marquis 'probably shouldn't have' continued to sell the accused products for as long as it did." Appx353-354.

Kartri acted no better. "[T]he evidence shows, throughout, a striking lack of concern about infringing on others' intellectual property rights on the part of Kartri

owners Kubus and Goskowski." Appx354. Nevertheless, the court gave Kartri the benefit of the doubt that Kartri's initial actions were merely negligent. Appx354.

However, "Kartri's infringing conduct after receiving the cease-and-desist letter was clearly willful." Appx355. When Marquis invoked its Chinese patent defense, Kartri's Goskowski could not fathom the relevance. "[S]he emailed [Marquis's] Middleberg, asking 'David, how do we get away with a China patent? How does that cover us in the U.S.?" Appx356.

The "Chinese patent defense" was reckless. Middleberg and Goskowski had no understanding how a Chinese patent could have any relevance (Appx4383-4384, 603:23 – 604:13). Because it didn't.

Goskowski also admitted she never had the Chinese patent translated (Appx4448 668:14-23), and never consulted her attorney who recently procured a patent for her – which was not an impulsive decision but one she gave thought to (Appx4454-4455, 674:24-675:23). She also presented a false declaration under the penalty of perjury about receiving any Chinese patent. Appx355 n.88.

Despite knowing of Focus's patents, Kartri moved forward. Appx231. It relied on Middleberg's opinion. *Id.* That was unreasonable: "Middleberg did not have any training or expertise in patent law." Appx233. Yet, nobody investigated. Appx277-278. They were quoted a mere $3,500 for an opinion of counsel (Appx4378-4379), but declined. They preferred willful blindness.

They relied on Pong, the Chinese manufacturer who was supplying the knockoff (Appx4328, 548:11-16).  That was irrational.[5]  Pong used to manufacture Focus's product (Appx4373-4374, 593:14-594:2).  And as Middleberg admitted, Pong consistently deceived.  Pong claimed to have a Chinese patent on the product.  But he didn't then:  his statement was false.  Appx4382-4383, 602:13-603:8.  Pong stated that Focus's U.S. patents were expired.  Also false.  Appx4384, 604:14-22.  Pong asserted that Plaintiffs might be asserting a "fake" patent number.  Appx4384-4386, 604:23 – 606:2.  Also false.  Pong alleged he was filing against Plaintiffs for violation of his "rights."  Also false.  Appx4386, 606:4-8.  Pong asserted a U.S. patent would be given to him in February 2016.  Also false.  Appx4390, 610:7-15.

Despite the repeated, continual, unreliability of Pong's statements, Marquis and Kartri continued to sell the accused products.  Appx4390-4391, 610:17-611:3.  They ignored all the falsities.  Their reliance on Pong was also reckless.

Kartri claims to be puzzled (p.56) that the court did not credit its counsel's letter.  There is nothing "puzzling."  Kartri admits (p.15 n.5) that it never entered the letter into evidence.[6]

---

[5]  Middleberg knew Pong was not an attorney.  Appx4378, 598:5-7.

[6]  Thus, the trial transcript (Appx3780-4837) and Kartri's Post-Trial Proposed Findings of Fact (Appx4841-4889) never reference that letter.

Thus, it cannot be part of this appeal.[7]  Focus requested that Defendants remove it from the Joint Appendix, but they refused.  Accordingly, Focus moves to strike it and the subsequent correspondence from Kartri's brief and the Appendix, per CAFC Rule 27(e).  Appx6893-6902.

In fact, Defendants waived an opinion of counsel defense before trial. (Appx 4696-4697 (Kartri); Appx4564-4566 (Marquis)), so Plaintiffs had no discovery on it (Appx4697, 917:4-9).  Then, at trial, Defendants tried to sneak in testimony on counsel's opinions, leading the court to admonish them on numerous occasions.  *E.g.*, *id.*

These were tactical decisions.  Had they admitted the letter, Plaintiffs would have admitted their detailed replies, the last of which Defendants ignored (Appx6902).  And the letter would have been used against them.  An opinion must be competent (Appx351, citing cases).  Here, the "opinion" failed to even review the file wrapper, a basic step.[8]

---

[7]  *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373 (Fed. Cir. 2018) ("We do not consider evidence that is not part of the trial record"); *Rosco, Inc. v. Mirror Lite Co.*, 2003 U.S. Dist. LEXIS 26209, *3 n.3 (E.D.N.Y. July 8, 2003).

[8]  Appx351 (regarding casually rendered opinions); and, *What Every Business Executive Knows About Obtaining and Using Patent Opinions, Intellectual Property Today,* June 2009 at 32 ("You will never see a competent opinion that fails to consider and analyze the file history of the patent").

Willfulness is assessed under a preponderance standard.  *Halo,* 579 U.S. at 107.  The heavy weight of evidence showed that, for years, Defendants knowingly infringed, or recklessly[9] turned a blind eye to the high risk.  They only stopped when the judicial writing was on the wall.

Based on substantial evidence, including the documents and the witnesses' in-person testimony and credibility, the court concluded that Defendants acted in deliberate bad faith.  That is not clearly erroneous.

## V.  Defendants Infringed The Word Marks

### A.    *Kartri Infringed the HOOKLESS® Trademark*

The court correctly held the HOOKLESS® mark valid and infringed.[10]

#### 1.    *HOOKLESS® is a Valid Mark*

As to the alleged descriptiveness of the HOOKLESS® mark (Kartri pgs.41-42), "Kartri neither asserted the alleged invalidity of the HOOKLESS® mark – on any basis – as an affirmative defense nor included it as a counterclaim."  Appx100.  Thus, Kartri forfeited the defense.  *Id.*

---

[9]  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007) (willfulness includes recklessness); *Halo*, 579 U.S. at 106.  Likewise in trademark cases. *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1498 (2020) (Sotomayor, J., concurring) (citation omitted).

[10]  Only Kartri was accused of infringing the HOOKLESS® mark, not Marquis.

Also, HOOKLESS® was registered.  Appx258, citing U.S. Trademark Reg. No. 3,829,837.  "Such registration 'creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive.'"  *Id.* (citations omitted).  Defendants offered no rebuttal evidence.  Appx258-259.

On appeal, Kartri's sole evidence is a 2009 Office Action (p.42).  Kartri failed to raise this "evidence" at trial (Appx258-259), so it waived it.  Kartri also neglects to mention that the Examiner *withdrew* the rejection and entered a Section 2(f) claim (Appx6573) based on Applicant's extensive evidence (Appx6584-6674). The mark then registered (Appx6556).  Kartri again tries to mislead.

In short, the court properly found that the HOOKLESS® mark is valid.

### 2.    *Kartri Infringed the HOOKLESS® Mark*

Contrary to Kartri's allegations (pgs.42-43), the court evaluated whether Karti's actions were likely to cause confusion.  Kartri routinely marketed its curtains as HOOKLESS® products in its communications.  *E.g.*, Appx233-234. For example, Kartri's "Dolph quoted a price for a 'Hookless Double H Chevron pattern' curtain" to customers.  Appx234.  Likewise, "when Karen Teska … requested a quote for 'Hookless shower curtains using our matrix fabric[]' Dolph quoted a price."  Appx238.

In the Second Circuit, the *Polaroid* factors govern the infringement analysis. The court exhaustively analyzed the evidence on all eight factors.  Appx266-299.

It separately weighed the HOOKLESS® mark, EZ ON mark, and Trade Dress, finding that "[t]he assessments differ slightly by issue." Appx297.

For each factor, Kartri's appellate burden is to show that the findings were clearly erroneous. *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993) ("resolution with respect to each separate factor is a factual finding, subject to the clearly erroneous standard.") Kartri only challenges two – actual confusion and bad faith (pgs.43-44). Its curt comments do not show either was clearly erroneous.

On the former, Kartri marketed its products as "Hookless" in communications with buyers, who then professed they thought they had purchased authentic HOOKLESS® products (Appx289 n.48). That is actual confusion.

On the latter, Kartri's claim of good faith is ludicrous. As the court found, "the factor of bad faith cannot be logically cabined to the EZ-ON Mark." Appx292. Kartri quoted prices for and marketed "HOOKLESS" products (Appx278 n.44); made them look like Plaintiffs' HOOKLESS® EZ ON® product (*supra,* Section IV.B), and dubbed its product a "version of HOOKLESS called EZY Hang." Appx233-234. That was meant to confuse, since Plaintiffs' licensed version was marketed as EZ ON®. "Defendants' strategy of deliberate infringement … was holistic." Appx292.

And legally, actual confusion and bad faith need not be shown. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986) (actual confusion); *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 44 (2d Cir. 2016) (bad faith). Thus, Kartri's challenge fails.

### B.    Plaintiffs Had Standing to Assert the EZ ON Trademark

The court correctly found that Plaintiffs (not Carnation) owned the EZ ON mark before filing suit in 2015, per the 2012 Agreement (Appx3413-3425) between Carnation, ZDG, and Focus's predecessor Arcs and Angles ("A&A").

First, the EZ ON product was the Licensed Product which Plaintiffs licensed Carnation. Appx247-248. Kartri does not deny this.

Second, "under §4.2, A&A LLC 'grants' Carnation the right to use the mark 'EZ ON Shower Curtain' … It would not have made sense for licensor A&A LLC to grant Carnation the right to *use* the EZ Mark on its shower curtain products if Carnation *owned* the mark." Appx249; Appx3415 (contract). That is logical.

Contrary to Kartri (p.44), the court did not "misinterpret" this. It says that A&A *grants Carnation the right to use the mark*. As Carnation's President Mayer admitted, A&A could not have granted Carnation the sublicense to EZ ON if A&A did not own those rights. Appx249.

Thirdly, Section 5.3 confirmed a mutual understanding that Plaintiff owned all intellectual property related to the Licensed Product. Appx3417. That included

the EZ ON mark and registration.  Appx249-250; Appx5403 (product's packaging with mark).

 As to "goodwill," the argument was not raised below (Dkt. 500 at 7-9), so it was waived.  It is also meritless.  Under §5.2 (Appx3416), Carnation's uses all inured to Plaintiffs' benefit, which benefit necessarily includes goodwill.

As to the 2021 assignment, it was not admitted into evidence so Kartri's arguments are not cognizable.  Appx251, n.28.  Also, Carnation's filing of the application which resulted in the registration is not dispositive.  Carnation later assigned that federal registration to Plaintiffs, per its obligation under §5.3.  *Id.*

As the court correctly ruled, Plaintiff had standing as the owner of EZ ON.

## VI.    The Defendants Infringed Valid Trade Dress

The evidence showed that Plaintiffs did not merely innovate, warranting patents.  They built brand recognition – warranting trade dress rights.  On the latter, the court ruled that Kartri deliberately created consumer confusion as to source.

### A.    *The Trade Dress is Strong*

Based on overwhelming evidence of secondary meaning, the court concluded that Plaintiffs' Trade Dress is strong.  Appx268-279.

As a few examples, "by 2013, [Plaintiffs'] curtains were hung in approximately 2.5 million hotel and motel rooms … this equated to 'over 100

million individual exposures,' and greater brand awareness" each year. Appx270-271. "Kartri owner Kubus … testified that customers frequently called Kartri demanding 'Hookless' products, or 'either have a picture attached from Focus's website'; she estimated that 50% of buyers inquiring about hookless shower curtains asked Kartri for *Focus's* products." Appx273. "QVC named [Plaintiffs'] shower curtain the 'Best New Product'"; and magazines praised them as "cutting edge" and "ingenious." Appx273-274. From relative obscurity, they rose to become "the number one shower curtain in [the] hospitality [sector]," with the dominant market share (Appx275), which even Kartri conceded (Appx227). Kartri likewise admitted that Plaintiffs' products are famous in hospitality. Appx4518-4519 (738:24-739:4).

Defendants' briefs do not dispute these findings, implicitly conceding that Plaintiffs' Trade Dress is a source-identifier.

### B.    *The Trade Dress is Nonfunctional*

#### 1.    *Defendants Submitted No Relevant Functionality Facts*

"Whether a trade dress is or is not functional is a question of fact disturbed on appeal only if clearly erroneous." *Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 182 (2d Cir. 2021).

Defendants' appellate burden was to identify *evidence in the summary judgment record* that the factual finding was clearly erroneous. They identify

nothing (Kartri Brief pgs.49-51), because they presented nothing below.  They

merely submitted attorney argument that "trade dress can also be functional 'if the

right to use it exclusively would put competitors at a significant non-reputation-

related disadvantage.'"  Appx125-126.  But as the court noted, "Defendants have

not pointed to any ***admissible evidence*** demonstrating the claimed 'disadvantage.'"

Appx126 (emphasis added).  Hence, summary judgment was fully warranted.

### 2.    *They Waived Their New Arguments*

Kartri asserts issues (pgs.46-51) never presented below.  It never submitted

to the court its new utilitarian functionality allegations based on *TrafFix*.  Dkt. 253

at 50.  Accordingly, those arguments were waived.  *Norton v. Sam's Club*, 145

F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are

considered waived and normally will not be addressed on appeal.").

### 3.    *The New Arguments Are Also Meritless*

Though Defendants never argued *TrafFix*, the court considered it anyway

(Appx125-126).  It factually concluded that the Trade Dress was not "essential to

the use or purpose of the article or … affects the cost or quality of the device"

(Appx126).  That finding is not clearly erroneous.

Kartri attacks alternative designs as if they were the sole basis for the

decision, and as if they are immaterial.  Brief p.50.  In fact, the court found no

evidence of functionality – period (Appx126). The alternative designs only further evidenced *non*-functionality.

Moreover, alternative designs remain highly relevant. As this Court held, "[w]e have often emphasized the presence or absence of alternative designs, noting that the existence of 'several ways to achieve the function of an article of manufacture,' though not dispositive, increases the likelihood that a design serves a primarily ornamental purpose." *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1319 (Fed. Cir. 2019) (citation omitted). By definition, a design is not essential when there are alternatives. *E.g.,* Appx7186 (some non-infringing alternatives).

As to *Sulzer*, it noted that "*Louboutin* [in 2012] set out the three-step functionality test, where '[a]t the start, we address the two prongs of the *Inwood* test, asking whether the design feature is either essential to the use or purpose or affects the cost or quality of the product at issue. . . . Next, if necessary, we turn to a third prong, which is the competition inquiry.'" *Sulzer*, 988 F.3d at 183 (citations omitted). Here, the court considered the facts on all *three* prongs.

On appeal, Kartri alleges the Trade Dress has "benefits" (pgs.50-51). That is a far cry from proving – with evidence – that it is "essential."

Also, Kartri's "benefits" claim misleadingly conflates the English word "functional" with the legal concept of design "functionality." *Hupp v. Siroflex of*

*Am., Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997) ("The function of the article itself

must not be confused with 'functionality' of the design of the article."). Kartri's

"analysis is fundamentally flawed … although a component of a product may be

'functional' in the sense that it performs a function, that does not mean that it is

'functional' in the sense intended by the functionality defense." *Lon Tai Shing*

*Co., Ltd. v. Koch & Lowy*, 1990 U.S. Dist. LEXIS 19123, *84-85 (S.D.N.Y. Dec.

14, 1990) ; *Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, 1148

(2d Cir. 1987) ("the true test of functionality is not whether the feature in question

performs a function, but whether the feature 'is dictated by the functions to be

performed,' … as evidenced by available alternative constructions.").

Judge Schofield's May 2021 opinion does not change this calculus. She

ruled on a preliminary injunction – before discovery[11] was conducted.[12] And she

later vacated her opinion, upon request. *Sure Fit Home Prods., LLC v. Maytex*

*Mills, Inc.*, 2023 U.S. Dist. LEXIS 98884, *4-5 (S.D.N.Y. May 16, 2023). She

acknowledged that her rulings were not "the law of the case since they were of a

---

[11]  *Compare, Sure Fit Home Prods., LLC v. Maytex Mills, Inc,* 21-cv-2169 (SDNY)
Dkt. 53 (opening discovery on May 20, 2021) *with* Dkt. 54 (preliminary injunction
Decision of May 26, 2021).

[12]  Kartri then misleadingly told Judge Engelmayer that this Court affirmed a ruling
of functionality. Dkt. 521 at 3 n.2. After Plaintiffs pointed out that was false (Dkt.
526 at 3), ***Kartri continued to peddle the falsehood*** (Dkt. 524 at 11).

preliminary nature and without a full and fair hearing on the merits." *Id.* *4 (collecting cases).  They have no precedential value.

In contrast, Judge Engelmayer issued his decision after full discovery (Appx125-126).  And the trial only confirmed it.  The court surveyed numerous non-infringing "shower curtain designs that enable easier installation than installing hooks" (Appx210-211, Appx7186), just like Plaintiffs' products, including competing hook-free products (Appx266).  For example, the Zenna product (Appx210, Appx7186, Appx2986) is the same as a design in Zahner's patents (Appx416, Fig. 17), but is outside Plaintiffs' Trade Dress.  The product was physically shown at trial (Appx6374), has the same benefits, and is comparable to Plaintiffs' Trade Dress.  It likewise pops onto a shower rod using slits in the rings. Kartri ignores this.

Kartri also ignores its own admissions regarding the Hospi-Tel product (Appx4514, 734:7-15), another hook-free product in the market not accused of infringement.  Kartri is also silent on Plaintiffs' applicable design patent (Appx918), whose issuance evidences ornamentality.  35 U.S.C. §171.

Judge Engelmayer applied the proper legal tests and carefully weighed the evidence on use, purpose, cost, quality, and competition.  Defendants fail to show the factual findings were clearly erroneous.

### C.     *The Trade Dress is Not Generic*

#### 1.     *Kartri Forfeited a Genericism Defense*

The court dismissed Kartri's allegation of HOOKLESS® word mark

genericism because Kartri never pled it.  Appx100.  Kartri did not plead trade dress

genericism either.  Appx833-836.  Thus, Kartri forfeited the defense.[13]

Once again, Kartri raises its argument for the first time on appeal.

#### 2.     *Marquis's Arguments are Meritless*

As to Marquis, its genericism arguments are conclusory (p.58).

Plaintiffs' detailed Trade Dress claim (Appx264) was not to a vague or

general concept (*id.*).  And it was not to a genus; it was to a sub-sub-sub-sub

species.  Appx7187, II.C.2.ii.(1).

Furthermore, the court understood Plaintiffs' burden (Appx257-258).  In

fact, Judge Engelmayer initially ruled *sua sponte* against Plaintiffs. To his great

credit, he withdrew that opinion when presented with the evidence.  His detailed

non-genericism post-trial factual findings were well-grounded (Appx262-266).

Marquis utterly fails its substantial burden of showing them to be clearly

erroneous.

---

[13]  *See e.g.*, Dkt. 325 at 14 (objecting that Kartri never pled this defense, and
disclosed no contentions on it in discovery, such that Kartri should be precluded
from raising it at trial).  The court repeatedly ruled that Defendants were barred
from raising defenses not pled.  Appx100; Appx161 (26:4-24).

### 3. *Kartri Identifies No Evidence that the Finding is Erroneous*

Kartri's waived arguments are meritless too.

Genericism is factual. "The factual issue presented is how the purchasing public views the mark. The fact-finder is not the designated representative of the purchasing public, and the fact-finder's own perception of the mark is not the object of the inquiry. Rather, the fact-finder's function is to determine, based on the evidence before it, what the perception of the purchasing public is." *Lane Capital Mgmt. v. Lane Capital Mgmt.*, 192 F.3d 337, 344-45 (2d Cir. 1999). *Accord*, *In re Mavety Media Group, Ltd*., 33 F.3d 1367, 1371 (Fed. Cir. 1994) ("appellate judges are a part of the composite of the general public, but they represent only a tiny fraction of the whole, which necessarily encompasses a wondrous diversity of thought.") That determination must be made as of the date that Defendants commenced infringement. *Nora Bevs., Inc. v. Perrier Grp. of Am. Inc.*, 164 F.3d 736, 744-45 (2d Cir. 1998).

Kartri presented no evidence below, and none on appeal (pgs.48-49). In contrast, the post-trial factual findings were solid (Appx262-266).

Firstly, the court found that "Plaintiffs' Trade Dress is drawn in clear and specific detail." Appx264. "This level of specificity goes well beyond proposed trade dress descriptions that have been found unprotectible and generic."

Appx265.  "Plaintiffs' Trade Dress also does not capture a mere idea, but a concrete expression of it."  *Id.*

Secondly, "the Trade Dress is narrow enough to permit competing commercial products and not confer a monopoly on plaintiffs."  Appx264.  "[P]laintiffs' Trade Dress leaves ample room for competing hook-free products."  Appx266.  The court reviewed numerous "hook-free" designs, including competitors' products, that were not within the Trade Dress.  Appx266; Appx209-211; Appx7186.  Plaintiffs also provided a taxonomy, with its Trade Dress being limited to category II.C.2.ii.(1).  Appx7187.  Some designs in Zahner's own patents fell outside his Trade Dress.  Appx211, n.12.  And even Kartri patented a design outside the Trade Dress.  Appx266.[14]

Thirdly, "that a trade dress is not functional bespeaks a lessened threat to competition."  Appx266.  The court's earlier non-functionality ruling was only reinforced at trial.  *Id.*

Thus, the court extensively considered this issue, and found that the Trade Dress was not generic.  Kartri (pgs.48-49) identifies no evidence that *any* of these factual findings were clearly erroneous, much less all of them.  Its mere attorney argument (*id.*) completely fails to meet its burden.

---

[14]  Despite a typo, the context and cites show the court meant to state that "Kartri's patented design using gliders is also [] outside plaintiffs' Trade Dress."  *Id.*

### D.    *The Patents Do Not Invalidate the Trade Dress*

#### 1.    *Kartri Waived its New Arguments on Appeal*

As to patents vs. trade dress, Defendants again submit arguments (Kartri Brief pgs.52-54) not presented below during summary judgment (Dkt. 253 at 39-41), or trial.  Thus, they waived them.

#### 2.    *The Patents and Trade Dress are Factually Separate*

Defendants' premise is also faulty.  Though the patents and Trade Dress have some overlap, they are **not** co-extensive.  Various configurations fall within the patents but not the Trade Dress, and vice versa.

For example, claim 1 of the '248 Patent covers, *inter alia*, the configuration in Figure 20 with a ring above the hem.  Appx417.  But that is excluded from the Trade Dress, which does not cover a product with a hook or ring protruding above the upper edge of the curtain.  Appx209, element (1).

Conversely, many Trade Dress limitations are not in the patent claims.  The Trade Dress requires various aesthetics, including:  a "neat" and "orderly" upper edge; a ring bottom surface which is coplanar with the curtain material; rings which are fixed in place; and so forth.  Appx209.  Defendants do not point to a single patent claim requiring these features.

The patents also disclose embodiments which do not fall under the patent claims **or** Trade Dress.  Appx211, n12, citing disclosed but unclaimed patent

Figures 15-17 (Appx416).  Thus, Focus's competitor Maytex has sold a "Zenna" or "Zenith" commercial embodiment of Figure 17 which does not infringe the Trade Dress rights (Appx210-211, and n.11) or the patents.

Defendants' products demonstrate this too.  They infringed the '248 Patent, since their slit has an "approximately horizontal component."  *Infra*, Section VIII.A.  If it had been a straight diagonal, it would not have infringed that patent, only the Trade Dress.

To evade these facts, Kartri misleadingly defines the "gist" of the Trade Dress as "the ring-and-slit configuration."  Kartri p.50.  It ignores the *details* of the Trade Dress (Appx209) and patent claims.  Then it argues based on a false equivalence that the patent claims and Trade Dress are the same.  They are not.

### 3.    *Patents and Trade Dress are Legally Distinct Regimes*

Kartri asserts that the Trade Dress is unenforceable after the patents expired. Kartri is wrong.

"Trademark rights … do not "extend" the patent monopoly.  They exist independently of it, under different law and for different reasons.  The termination of either has no legal effect on the continuance of the other.  When the patent monopoly ends, it ends.  The trademark rights do not extend it." *Krueger Int'l, Inc. v. Nightingale Inc.*, 915 F. Supp. 595, 604 (S.D.N.Y. 1996) (Sotomayor, J.), quoting *In re Mogen David Wine Corp.*, 328 F.2d 925, 930 (C.C.P.A. 1964).

This is because "[p]atents reward invention, the creation of new designs,

regardless of whether they are commercialized.  Trademarks, on the other hand,

reward commercialization and investment in the same, protecting brand

recognition, and guarding against confusion.  …  The two legal regimes serve

different purposes."  *Id.; Hubbell Inc. v. Pass & Seymour, Inc.,* 883 F. Supp. 955,

959-60 (S.D.N.Y. 1995) (noting that "the federal patent and trademark laws have

co-existed for decades", discussing *Sears*, and analyzing the issue at length); *Lon*

*Tai*, 1990 U.S. Dist. LEXIS 19123, *104-06; *Kohler Co. v. Moen, Inc.*, 12 F.3d

632, 638-41 (7th Cir. 1993).

As such, product trade dress requires secondary meaning, whereas patents

don't.  And it takes years or decades to develop secondary meaning, so it cannot be

that trade dress and patents terms must necessarily be coextensive.

These exact scenarios were presented here.  The patents rewarded Zahner's

creation of new designs, and were granted regardless of commercializing anything.

In contrast, the Trade Dress rewarded his and his licensees' extensive marketing

for 17 years – investing in and commercializing products to high popularity.  *E.g.*,

Appx6543-6546 (QVC videos).  Those hard-won efforts were sufficiently

successful that his designs became source-identifiers associated with the

HOOKLESS® mark.  Even Kartri does not dispute those secondary meaning

findings.  And those rights exist only so long as there is commercialization, regardless of any patents.

Kartri disregards these facts and the legal framework.  It omits the Supreme Court's confirmation that "[a]s *Sears* itself makes clear, States may place limited regulations on the use of unpatented designs in order to prevent consumer confusion as to source." *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 165, 109 S. Ct. 971, 985 (1989).  Likewise for the Lanham Act:  "both the law of unfair competition and trade secret protection are consistent with the balance struck by the patent laws.  Section 43(a) of the Lanham Act … creates a federal remedy … Congress has thus given federal recognition to many of the concerns that underlie the state tort of unfair competition, and the application of *Sears* and *Compco* to nonfunctional aspects of a product which have been shown to identify source must take account of competing federal policies in this regard." *Id.*  "[T]he law of unfair competition … [has] coexisted harmoniously with federal patent protection for almost 200 years." *Id.* at 166.

Consistent therewith, *TrafFix* does not bar trade dress to non-functional features. *TrafFix Devices v. Mktg. Displays*, 532 U.S. 23, 30 (2001).  This was confirmed by the holding that even color can serve as a protectible trademark – if it is non-functional. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165-66 (1995).  Expired patents and non-functional trade dress may co-exist.

Consequently, the court's non-functionality finding means that the Trade Dress

passes muster under *TrafFix* too.

Moreover, the comparison required by *TrafFix* is between the Trade Dress

and the patent **claims**.  532 U.S. at 30 (referencing trade dress to features *claimed*

in an expired patent).  Kartri conveniently failed to analyze the patent claims below

and likewise on appeal (pgs.52-54), so its position must be rejected.

In short, the court's trade dress rulings were properly predicated on federal

and state law protecting against "consumer confusion as to source" (*Bonito Boats*,

489 U.S. at 165), as applied to "nonfunctional aspects of a product which have

been shown to identify source" (*id.* at 166).  The court analyzed this at length.

Appx262-266.  Defendants have failed to show that its factual findings were

clearly erroneous.

### 4.    *Kartri's Position is Also Inequitable*

Kartri had the opportunity to get in on the ground floor of HOOKLESS® in

the 90s, but spurned it.   It did not want to take the risk or put in the investment.

"Marcus pitched Zahner's technology to Kartri … [and] Kartri declined."

Appx216.  Kartri did not want to invest (Appx4506, 726:12-13).   As Kubus said,

"[i]t was just so farfetched."  Appx4507-4508, 727:17-729:14.  They "felt it wasn't

going to fly" (Appx4509, 729:12-13).  "Hooks … made a lot of money … it's

going to be very hard to move the hook business, traditional hooks, out of the way and sell a product like this."  Appx4509, 729:5-13.

Later, Kartri saw it bet wrong.  After Plaintiffs put in years of hard work and hundreds of thousands of dollars in investment (Appx215-216), HOOKLESS® started gaining traction (Appx215-216).  Ultimately, it achieved tremendous popularity.

Kartri then copied to profit from consumer confusion.  It exploited the recognition Plaintiffs built by investing immense time and money over 17 years.  This is ***exactly*** what Trade Dress law is meant to redress.

Nor is Kartri some small unsophisticated company as it likes to feign.  It is worth millions, even with its underreported sales of the infringements.  And its bad faith caused Focus millions of dollars in lost sales.

It is beyond peradventure that Plaintiffs invested hard work, time, and money to promote the HOOKLESS® products, and make them a success.  Now that their products are blockbusters, Kartri wants to reap what it did not sow.  Kartri claims it can sit back while Plaintiffs took all the risks, and then drop in and purloin the rewards.  After it "sat on the sidelines" (Appx233) – in its words – it demands a free ride off Plaintiffs' expensive efforts.  That is unjust.

Nor should the fruits of Plaintiffs' labors be held against them.  As Judge Learned Hand famously put it in another context, "The successful competitor,

having been urged to compete, must not be turned upon when he wins." *United States v. Aluminum Co. of Am*., 148 F.2d 416, 430 (2nd Cir. 1945).

Kartri's Trade Dress allegations are simply a thinly-veiled demand to infringe-at-will. It does not dispute the detailed findings that the Trade Dress is a strong mark with considerable secondary meaning, serving as a source-identifier. As a result, it seeks to trade off that brand recognition and create more confusion in the marketplace, after creating rampant confusion already. Appx288-290. ***Even Kartri's Sales Operations Manager was confused.*** She thought Kartri's curtain was a Focus product. Appx289 n.49.

"[T]he evidence is compelling that defendants, aware of the inroads Focus's innovation had made in the shower curtain market, intentionally sought to mimic Focus's Trade Dress to deceive customers to purchase Ezy Hang and thereby to capitalize on Focus's goodwill." Appx291. "This intentional simulation ... supports plaintiff's argument that it had succeeded in creating consumer recognition and good will for its product's dress which defendant was seeking to appropriate." *RJR Foods, Inc. v. White Rock Corp,* 603 F.2d 1058, 1060 (2nd Cir. 1979); *20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 815 F.2d 8, 10 (2nd Cir. 1986).

Trademark law is supposed to protect against such intentional copying creating consumer confusion. Kartri's self-serving position should be rejected.

### E.    *Kartri Infringed the Trade Dress*

The court's infringement finding was based on substantial evidence under all the applicable factors.  Appx266-298.  Kartri's own communications (Appx233-234, Appx238) reflect "Kartri's appreciation … of the strong similarity between plaintiffs' and defendants' products" (Appx233).

Knowing this, its "non-infringement" claim is based on meritless validity arguments it failed to assert below.  It claims (p.47) the court "ignores the correct standard … because such a trade dress can still be (and here, is) "an idea, a concept, or a generalized appearance."  That is false.  The court found that Plaintiffs' "level of specificity goes well beyond proposed trade dress descriptions that have been held unprotectible and generic" (Appx265) … "Plaintiffs' Trade Dress also does not capture a mere idea, but a concrete expression of it" (*id.*).  Kartri conveniently ignores the particularized details of the Trade Dress.

Nor did the court mislay the burden (p.46).  Plaintiffs provided extensive evidence that its Trade Dress is not generic and is non-functional, and Kartri provided no meaningful rebuttal.  Nor is alternative design evidence "outdated" post-*TrafFix*, as even this Court has recognized.  *Supra,* Section VI.B.3.

Defendants fail to show that the factual bases for the Trade Dress rulings were clearly erroneous, and ignore the purposes of the law, demanding a free pass for bad faith.  Their position should be rejected.

## VII.  Venue Was Proper

Kartri shamelessly demands that 8 years of litigation be scrapped.  Brief

p.37.  Such a wild waste of judicial resources is indefensible.

### A.    Defendants Waived Any Objections

Only Kartri moved as to venue.[15]  The court found that Kartri "forfeited its

venue defense by failing to raise it seasonably, by submitting to the cause, and by

submitting through its counsel."  Appx9-10.

That is reviewed for abuse of discretion.  *In re Micron Tech., Inc.*, 875 F.3d

1091 (Fed. Cir. 2017); *Columbia Sportswear N. Am., Inc. v. Seirus Innovative*

*Access., Inc.*, 942 F.3d 1119, 1132 (Fed. Cir. 2019).  Kartri cannot meet this high

standard, so its argument ignores it (pgs.32-37).

#### 1.    Karti Dallied

*TC Heartland*[16] originated from a Delaware decision in 2015.  *Kraft Foods*

*Grp. Brands LLC v. TC Heartland, LLC*, 2015 U.S. Dist. LEXIS 106515, *21-23

(D. Del. Aug. 13, 2015) ("Defendants next argue that a major change in the law

has also occurred with respect to venue.").  When Kartri moved to dismiss in

March 2016 (Dkt. 27), it could have presented the same objection.  But it didn't.

When it filed its Answer to the Third Amended Complaint in July 2016 (Appx670-

---

[15]  *E.g.*, Appx4 (referring solely to Kartri motion).

[16]  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258 (2017).

686), it could have preserved an affirmative defense on venue.  Again, it didn't (Appx682-683).[17]

TC Heartland's cert. petition was filed in September 2016, granted in December 2016, and argued in March 2017.  Appx12-13.  "All the while, as Kartri faced a live patent dispute in a venue in which it was not incorporated, the company failed to alert the Court to the possibility that venue might be improper."  Appx13.  Kartri does not deny this.

As Hughes noted, "[o]ur ruling is based largely on the fact that Hughes filed its motion only **after** the TC Heartland case was decided by the Supreme Court" (along with an upcoming trial).  In re Hughes Network Sys., LLC, 2017 U.S. App. LEXIS 13674, *3-4 (Fed. Cir. July 24, 2017) (emphasis added).  Likewise here.

"And once the Supreme Court's decision came down … Kartri still failed to raise any objection for four months.  Kartri has not claimed any excuse for this delay, and the Court will not imagine one … experienced patent litigators can hardly claim reasonable ignorance of the Supreme Court's decision …."  Appx13.

Kartri claims this finding was "arbitrarily concluded."  Kartri Brief p.31.  That is untrue.  As the court held, "Kartri simply took too long to raise its

---

[17]  Even Kartri's October 2017 Answer to the Fourth Amended Complaint (Appx817-838) – after TC Heartland was decided in May 2017 – failed to (Appx833-834).

objection." Appx12.  That finding was well within its discretion, especially compared to other cases upheld by this Court.

*Hughes* filed a transfer motion twelve days after the *TC Heartland* decision. *Hughes*, *id* *3.  TTI waited almost thirty days.  *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1351 (Fed. Cir. 2019).  *FedEx* waited over two months. *In re Fedex Corp.*, 2018 U.S. App. LEXIS 32304, *4 (Fed. Cir. Jan. 23, 2018). Each motion was denied, and this Court found no abuse of discretion.  In contrast, Kartri waited longer than *Hughes, Chamberlain,* and *FedEx* combined.  And it offered no excuse below for its delay.

Kartri's cites (pgs.37-38) are inapposite.  Oath moved within 21 days of *TC Heartland*'s decision.  *In re Oath Holdings Inc.*, 908 F.3d 1301, 1306 (Fed. Cir. 2018).  And the other cases did not arise under *TC Heartland* or waiver by delay.

As the district court sagely observed, "[a] hypothetical illustrates the point. Let's suppose that the complaint in this action were filed today.  The *TC Heartland* defense is clearly available.  Kartri would have had 21 days from today to serve a motion to dismiss for lack of venue … [Absent] extraordinary circumstances, the Court surely would not grant the motion to dismiss … filed more than four months after the basis for the motion became apparent … As the Court perceives nothing extraordinary in the circumstances, the Court deems the objection forfeited." Appx13-14.  The court was well within its discretion to find forfeiture.

### 2. It Sued

Kartri also filed counterclaims against Focus, and a permissive claim against Marquis. As the Supreme Court has held, that forfeited any venue objection. Appx14-15. *See also, Bonworth, Inc. v. Runway 7 Fashions, Inc.,* 2023 U.S. Dist. LEXIS 139135, *18 n.9 (S.D.N.Y. June 20, 2023) ("if defendant interposes a permissive counterclaim, plaintiff cannot object that … venue is improper."). Kartri does not dispute this (pgs.33-37). It consented to – indeed *invoked* – the court's jurisdiction and venue. It cites nothing allowing withdrawal of its consent.

Nor was Kartri "prejudiced by being forced to litigate" in New York (p.37). Moreover, New York is no legal wasteland: Kartri had its pick of local talent. It chose Barney Molldrem, a member of the SDNY bar since 10/17/1978.

Lastly, Kartri's poor conduct excuse (*id.*) is ludicrous. Defendants' choice to flout court orders, submit false data and testimony, etc., would have been the same anywhere.

### 3. It Forfeited

Kartri also forfeited objections by its conduct. Appx15. "Kartri has willingly, and without any evident inconvenience, participated in substantial pretrial litigation. … fact discovery has concluded, the parties' joint claim terms chart has been filed, [and] a schedule for Markman briefing has been set."

Appx15-16.  Over the course of four pages (Appx6-9) the court itemized numerous

transpired pretrial proceedings, and could have listed more (Appx479-491).

Even after *TC Heartland*, "which certainly should have catalyzed a venue

motion if Kartri had not thought previously to make one, the parties have engaged

actively in discovery and begun to litigate claim construction.  During that time

they have sought and received the intervention of this Court and Judge Ellis in the

form of conferences and orders."  Appx16.

Dissatisfied with the court's orders, including the June 2017 one compelling

discovery (Dkt. 114), Kartri wanted different judges.  To let Kartri bolt would have

undermined the integrity of the legal process.  *Texas v. Penguin Grp. (USA), Inc.*

*(In re Elec. Books Antitrust Litig.)*, 2014 U.S. Dist. LEXIS 57414, *42-43

(S.D.N.Y. Apr. 24, 2014).

The advanced stage also supports the court's exercise of discretion.  *Fedex,*

2018 U.S. App. LEXIS 32304, *4-6.  A transfer would have been disruptive.

Moreover, only Kartri moved to transfer.[18]  Moving one defendant would

have been wasteful, considering the overlapping facts and issues.  And to shift

midstream, after fact discovery, to 3rd Circuit trademark and/or procedural law, and

to new judges, was unjustified.

---

[18]  Marquis never moved as to venue.  Appx4 (referring only to Kartri motion).

Kartri's demand, to scrap eight years of judicial and party resources, is unconscionable. The court rightly held that "the interests of justice would not be served by transfer." Appx16.

## VIII. Every Disputed Patent Limitation Was Addressed

The court never ignored limitations. It addressed every disputed one in Plaintiffs' comprehensive claim charts (Appx2018-2028).

### A. *The Three Patents*

For the '248 Patent, the "[t]he sole dispute on infringement is whether the slit component in Defendants' product is 'approximately horizontal.'" Appx91. Defendants' brief did not identify any other issue. Appx2408-2412.[19] Finding that "Defendants offer no direct rebuttal to Focus's evidence'" (Appx92) the court granted "Focus's motion … as to this discrete issue" (Appx93).

For the '609 and '088 Patents, the disputed issues were whether Defendants' products have a projecting edge, and for the '609 Patent whether it was also next to the slit (Appx94-95). Defendants concurred (Appx2413, Appx2418-2419). Defendants' product included these features (Appx94-95).

---

[19] This was the sole issue as to Claim 1. Though Defendants confusingly alleged an issue regarding Claims 9 and 20, they then acknowledged that Plaintiffs never asserted those claims. Appx2408-2409. *See also,* Appx2018-2019 (claim charts).

## B.    The Reconsideration/Clarification Motion

After the summary judgment ruling, Plaintiffs sought clarification that Defendants infringed, since no issues remained.  Dkt. 303 at 7-10.  Defendants' response did not identify any other issues.  Dkt. 305 at 8-10.  Their summary judgment briefs didn't either (as noted above).  Accordingly, the court ruled that "[t]here are no remaining matters to be resolved related to the claims of infringement of the utility patents.  Plaintiffs are thus correct that these patents were infringed as a matter of law."  Appx119-120.

It is too late for Marquis to raise new arguments years later.  It waived them by not raising them before.[20]

## IX.    The Court Properly Construed The Patents

### A.    The '248 Patent

#### 1.    The "Approximately Horizontal" Limitation

##### i.    Defendants Waived Their Position

The claim requires a slit with "an approximately horizontal component" (Appx2018), which the court construed (Appx60-65).

---

[20]  Arguments available to a party but not raised at summary judgment are waived on appeal.  *VR Optics*, 2023 U.S. App. LEXIS 3678, *21.

Element 232b is an example of an "approximately horizontal component."

Appx417 Figure 20, Appx424 (8:17):



| The '248 Patent | Defendants' Design |
|---|---|

The court noted that Focus's expert measured component 232b's slope as

26º from level; and measured Defendants' component's slope as 22º from level.

Appx92; Appx2029.  Thus, "the horizontal component of defendants' design is

**even closer** to horizontal, i.e., 0º, than Focus's design.  Because the Court has

construed the 'approximately horizontal component' as 'a component that is either

level or nearly so' [Appx65], this is powerful evidence that defendants' design

infringes this aspect of Claim 1 of the '248 patent."  Appx92 (emphasis added).

Below, Defendants did not dispute these measurements (Appx92).  Thus,

they waived their challenge on appeal.

ii.    <u>Defendants' Position is Meritless</u>

Marquis now claims that Plaintiffs' expert based his measure on "the angle of the slit on a different portion of the curve." That is false. The specification (Appx424, 8:17) labels component 232b as "approximately horizontal" – which is what the expert measured (Appx2029).[21] Plaintiff's expert, an MIT professor and Ph.D. with extensive scientific publications and experience (Appx2119-2131), knows how to measure an angle.

To overturn the factual findings, Marquis would have to show clear error. It provides no evidence, much less enough to meet its heavy burden. Indeed, Defendants never relied on their so-called expert to support their assertions, and tellingly have no contrary evidence on appeal.

Nor is *Nystrom* apposite. The Court there held that "patent drawings … may not be relied on to show particular sizes ***if the specification is completely silent on the issue***." *Nystrom v. Trex Co.*, 424 F.3d 1136, 1148 (Fed. Cir. 2005) (emphasis added). Here, the patent is **<u>not</u>** silent. It defines 232b as "approximately horizontal" (Appx424, 8:17). Marquis's position, that this Court should ignore the patent text and example, makes no sense.

---

[21] Nor did Plaintiffs' oral argument conflict. Plaintiffs described the figure and later measured it, as shown in Marquis's own brief. Defendants want to misleadingly focus on a tiny left edge of the component.

As to the court's offhand speculation, early on it *hypothesized* that "you can certainly imagine a situation where somebody who's got an incline that's at 5 percent or 7 percent is saying, that's outside of the bounds of 'nearly'" (Appx1869 line 24 - Appx1870 line 2).  Those abstract musings about percentages (not angles) were before the court received expert testimony measuring the angle in the figure, as the court itself acknowledged (Appx1870 lines 15-18; Appx93 n.8).

Nor is this "extrinsic evidence" (Marquis Brief p.35; Kartri Brief p.41).  The patent figure is *intrinsic* evidence, part of the specification, not an "absence of … disclosures."  Marquis Brief p.37.

Marquis would have this Court disregard the patent's own example.  "For the Court's construction to exclude Focus's own design would be nonsensical." Appx93.  Indeed, "a claim construction that excludes the preferred embodiment 'is rarely, if ever, correct and would require highly persuasive evidentiary support, which is wholly absent in this case'."  *Id., citing Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed. Cir. 1996), and *Duncan Parking Techs., Inc. v. IPS Grp., Inc.,* 914 F.3d 1347, 1364 (Fed. Cir. 2019).

Defendants' evidence-free position contradicts the facts and law.

2.    *The "Ring" Limitation*

i.    <u>Defendants Waived Their Position</u>

The court construed "ring" as "a piece of material that is curved at least in part and that generally encloses and reinforces an opening."  Appx52.  Marquis now seeks to limit "ring" to exclude a "flat upper edge."

During Markman, Marquis never asserted that construction.  In the joint chart, it argued that ring means "grommet", without further limitation.  Appx51.  Its brief then argued that a ring is "[a] fastener that reinforces the opening."  *Id.*  It did not argue that a "ring" is mutually exclusive with a flat upper edge.  *Id.*  Thus, it waived its new position.

It also failed to argue "ring" as a basis for non-infringement of the '248 Patent, another waiver.

ii.    <u>Marquis Contradicts Itself</u>

In fact, Marquis argued the opposite below.  Its stated that "[t]he term 'fastener' and 'ring' are used interchangeably for nearly all embodiments of the invention including the vertical and horizontal elongated oval rings of Figure 4 and the 'Superbowl' silhouetted D-shaped-ring shown in Figure 21."  Dkt. 174 at 11.

Notably, the "oval rings of Figure 4[b]" (Appx414), and "ring shown in Figure 21" (Appx417), both have flat upper edges:



Thus, Marquis admitted "ring" includes fasteners with flat upper edges.

Marquis also admitted "the written description states that an 'elongated ring can be any non-circular shape, including for example a rectangle or a quadrilateral." Dkt. 174 at 11.  Plainly, a "rectangle" also has a flat upper edge.

The intrinsic evidence Marquis cited contradicts its new position.  Under Second Circuit law,[22] its prior admissions are binding.[23]  Thus, the court should reject Marquis's newly-narrowed construction.

---

[22] "Preservation of appeal rights is a procedural issue[] for which this court looks to the law of the regional circuit." *VR Optics,* 2023 U.S. App. LEXIS 3678, *21 (citation omitted).

[23] "A judicial admission … has the effect of withdrawing a fact from contention and … binds the party making it throughout the course of the proceeding." *Pillars v. GM LLC (In re Motors Liquidation Co.)*, 957 F.3d 357, 360 (2d Cir. 2020).

iii.    Marquis's Position is Also Meritless

Furthermore, "ring" is used in many claims without qualification.  For example, '248 patent claim 1 does not restrict the ring shape.  And the figures (in every patent[24]) show many "ring" shapes, as Marquis admitted.

Essentially, Marquis now asserts prosecution disclaimer.  But "for prosecution disclaimer to attach, ***the disavowal must be both clear and unmistakable***."  *Mass. Inst. of Tech. v. Shire Pharm., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016) (emphasis added).  "Where the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations,' we have declined to find prosecution disclaimer." *Id.* (citation omitted).

Marquis does not meet this high standard.  It fails to identify any clear and unmistakable statement of disavowal.

Instead, Marquis raises suppositions about restriction requirements.  But "[t]he election of an invention in response to an ambiguous restriction requirement … cannot be said to provide any guidance forming a basis for narrowing a broadly drafted claim."  *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1351 (Fed. Cir. 2013).

In *Plantronics*, as here, the Patent Office did not "clearly demarcate the actual differences among the species of inventions."  *Id.* at 1352; '248 Patent File

---

[24] The '609 and '088 patents are continuations of the '248 patent.

History (Appx1409-1410); '609 Patent File History (Appx1033-1034). It found "patentably distinct inventions in the figures … without providing any reasons why these figures represented differing species." *Id.* Accordingly, the restriction requirement cannot narrow the broadly drafted "ring" language. *Id.* at 1351.

Marquis's failure to show "clear and unmistakable" disavowal is also confirmed by Kartri's arrival at the *opposite* conclusion. Kartri admitted below (Dkt. 173 at 15) that the '248 and '609 Patent claims cover Figure 31b, which has a flat upper edge (Appx420):



Marquis then *agreed* with Kartri's brief below (Dkt. 174 at 1) – another binding admission.

Marquis further admitted that an "election of species did not amount to surrender of claim scope" when "[o]ther figures from unelected species shared the structure that defendant alleged [] the restriction requirement was based on." Dkt. 55 at 11. *See also, Plantronics,* 724 F.3d at 1351. That applies too. The "flat upper edge" is in many species. It is in Figures 4B (Appx414) and Figure 31B

(Appx420) of Species I (Appx1409); and in Figure 21 (Appx417) of Species V. It is not a mutually exclusive characteristic: rather, it repeats across species.

Marquis's cancelation of claims argument is likewise specious. The Examiner *also* withdrew claim 88, "wherein said ring extends above said hem." Appx1414, Appx1423. But Figure 20 (Appx417) of elected Species IV (Appx1409, Appx1423) shows the ring extending above the solid line hem.[25] Under Marquis's position regarding claim cancellation, the claims do not extend to the structure in a preferred embodiment of the elected species. That is legally wrong,[26] and confirms that an ambiguous restriction cannot limit the claim.

Nor do Defendants practice the exact embodiment of Figure 21 (Appx417) they allege excluded from the claims. Their slit shape and position are different (Appx2076-2078).

Regarding the '088 patent, Marquis selectively quotes the prosecution. The applicant presented a broad claim,[27] and the Examiner issued a double-patenting rejection (Appx1135). The Applicant then amended to claim (1) a flexible ring

---

[25] *See also,* Appx424, 7:62-64 ("[i]n this embodiment, a portion of the ring – the finger only – projects above the upper edge of the curtain …").

[26] *Vitronics,* 90 F.3d at 1583 ("a claim construction that excludes the preferred embodiment 'is rarely, if ever, correct").

[27] Original claim 1 required "an item for hanging, said item comprising a ring having an opening such that said item is suitable for suspension from a rod, said item further comprising a projection from said ring in a location such that said projection can be moved to assist in widening said opening." Appx1112.

allowing increase of the slit's width, and (2) a flat upper edge, and (3) a slit exiting the inner circumference at a location offset from 12 o'clock (Appx1147), and argued the same (Appx1150-1151). Even (1) was not recited in the parents' claims (Appx425-428, Appx443), much less this combination. Marquis ignores this.

Marquis raises supposition: what it thinks the Examiner believed, or Applicant meant, should have argued, could have done, or "constructively" did, based on conjecture and self-serving interpretations.[28] Its brief (p.39) also confuses disclaimer (for literal infringement) with estoppel under *Festo* (for the doctrine of equivalents). Contrary to the disclaimer requirement, Marquis identifies no unequivocal, unambiguous disavowals. *Plantronics*, 724 F.3d at 1350. Aside from Marquis's waiver, the ambiguities regarding undemarcated bases for the species, and shared structure between elected and unelected species, mean that the claims cannot be limited as Marquis seeks. *Id.* at 1352 ("Given these ambiguities, there is no basis to limit the broadly drafted claims"). Adding a flat upper edge to the claimed "ring" cannot evade infringement.

### 3. *The Exiting of the Slit at the Upper Edge*

The court construed "said slit exits said ring at said upper edge of said curtain" as "the slit exits the ring at or near the upper edge of the curtain."

---

[28] Contrary to Marquis's spin, Applicant properly responded. The '248 and '609 patents each claimed at least one feature from any of Figs. 18-20.

Appx65-66.  Below, Defendants argued that the slit must exit the ring and upper edge of the curtain "simultaneously."  Appx66.  On appeal, Marquis (pgs.41-42) likewise tries to remove "at or near" to constrain the claim to a slit exiting precisely at the upper edge.

### i.    Marquis Waived Its New Arguments

Marquis challenges the construction based on alleged "broadening" in reexamination vis-à-vis the original patent, and invalidity.  *Id.*  Its arguments were not raised below (Dkt. 174 at 24-26), so they were waived.

### ii.    Its Arguments are Also Meritless

Marquis also contradicts the prosecution history, as the court recognized. Appx66.  In reexamination, the patentee proposed narrowing issued claim 1 (Appx425) by adding language that the slit "simultaneously exits said ring and said upper edge of the curtain" (Appx1324, Appx1317).  The PTO rejected that, and proposed broader language – without "simultaneously." (Appx1311-1312).  "This limitation is considered to better define the invention … and does not limit the exit of the slit to the precise (and unsupported) location defined by Patent Owner's proposed 'simultaneously."  Appx1312.  The patentee adopted the proposal (Appx1291).

Thus, the slit is **not** limited to exiting precisely at the upper edge.  Appx66 ("the prosecution history squarely forecloses such a reading.").

Marquis is even inconsistent with itself.  It posits that the '248 Patent is limited to the features of elected species IV, but those figures (Appx417) show the slit exiting the ring below the curtain's upper edge (Figure 18), or at the upper edge (Figure 19), or above the upper edge (Figure 20).[29]

The court's construction of "at or near the upper edge" is fully consistent with all the intrinsic evidence.

### 4.    The "Slit Extending From Said Upper Edge"

Marquis also argues (p.43) "the '248 Patent claim 1 limitation '*a slit extending from said upper edge through said ring to said opening.*'"  Marquis admits this "was not construed during [] Markman" (*id*) – because Marquis never raised it, waiving it.  And it is meritless.  Marquis imports a limitation:  there is no "begins" language in the claim.  Moreover, Marquis's product has a slit beginning at the upper edge of the curtain (Brief p.44), so its argument is frivolous.

### B.    The '609 Patent

### 1.    The "Projecting Edge" Limitation

The court properly construed a projecting edge as "an edge that projects from the outer circumference of the ring." Appx67-69.

---

[29] *See also*, Figures 4B, 9, 12, 18-20, and 28, showing slit exiting the ring below the upper edge of the curtain (Appx414-419) and Figure 16 shows it exiting above the upper edge (Appx416).

Marquis falsely represents (p.45) that this '609 Patent limitation "does not have priority" to the original '248 Patent specification.  The original '248 Patent specification (S/N 09/617,402) stated that "a ring 200, 210 or 220 is provided with *a projecting edge*, flange, extension, or finger 206, 216, or 226.  Extensions 206, 216 or 226 are *projections off of the ring* (*preferably off of the ring's outer circumference*)." Appx1378 (emphasis added).

Marquis also wrongly alleges (p.46) that the court "diverged from … the intrinsic record."  The court recognized that "[t]he term projecting edge" appears in the claims of the '609 Patent and the '088 Patent.  Each patent's claims themselves define the term:  '[S]aid projecting edge being an edge which projects from said outer circumference of said ring.'  *E.g.,* '609 Patent at 12:14-16, '088 Patent at 11:21-23."  Appx68.   It is fundamental that the claims are intrinsic evidence, and that it is proper to rely on the claim's own definition.  *Vitronics*, 90 F.3d at 1582 ("the court should look first to the intrinsic evidence of record … including the claims …. Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language.").

The court's construction was consistent with the afore-cited specification too, which defined the projecting edge as a projection off of the ring, preferably off the outer circumference.  *Id.* ("the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to

the meaning of a disputed term."); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (en banc) ("the specification 'acts as a dictionary when it expressly defines terms used in the claims").

Marquis wrongly banks on the PTAB's construction in an IPR of the child '088 Patent. Leaving aside whether the district court and PTAB constructions are inconsistent, Marquis contradicts well-established law. When that IPR was instituted, the PTAB was bound to "construe claim terms … according to their broadest reasonable construction in light of the specification of the patent." Appx1611. That is not the standard for district courts.

Moreover, Marquis contradicts itself again. In court, it claimed the PTAB definition "is broader than the definition the patent applicant provided in the '609 patent file history." Dkt. 174 at 28. Now it claims (pgs.46-47) the court should have adopted the PTAB definition.

Marquis also misstates (p.46) that the court incorporated extrinsic arguments by Appellees from a prior litigation. As the court noted, **<u>Kartri</u>** relied on such arguments: Kartri alleged that "projecting edge" was limited by Focus's statements in another litigation, to allegedly not cover Kartri's ring. Appx69. The court rejected that, based on the record. "[I]n the same discussion, Focus described another D-shaped ring, this one with a diagonal slit, as having a 'projecting edge,' notwithstanding that no portion of such a ring 'protrudes' or 'juts' out." Appx69.

The figure in question from the prior litigation was as follows:



**FIG. 2**

Defendants' ring has the same structure, so Focus's position on the earlier ring is consistent with its position on Defendants' ring. The only difference in the products was not the ring, it is Defendants' bend in the slit.

Indeed, Defendants' projecting edge fulfills the purposes recited in the specification (Appx441, 8:18-29), even though that is not required by the claim language. Defendants' structure makes it easier to open the ring; extends above the circular circumference to prevent drooping of the curtain; and so forth.

Marquis also misrepresents (p.46) that the court asserted that "'projects from' *cannot mean* as [sic] protruding or jutting out from the outer circumference." The court said no such thing. It simply rejected Kartri's attempt to limit the claim to "something that protrudes" or "juts out", finding "no basis for using Focus's prior representation to limit the clear scope of the claim term." Appx69. The court properly found this because "the Court cannot import a limitation from the

specification."  Appx68, citing *SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001).

Below, Marquis even contradicted the patent, positing that one of the structures labeled by the patent as a projecting edge from the outer circumference was not one.  Appx2153.

In short, the court properly based its construction on the intrinsic evidence, and was even consistent with the extrinsic evidence.

### 2.  The "Ring" Limitation

As noted (*supra,* Section IX.A.2), Marquis waived its position, and the court properly construed "ring" in the '609 Patent claims.

### 3.  The "Next to Said Slit" Limitation

For this limitation, "[a]t argument, the Court proposed the following construction 'adjacent to the slit.' … No party objected to this construction."  Appx69.  Accordingly, Defendants waived objections.

Moreover, Defendants' projecting edge 580 **is** "next to" the slit 560, as shown below.  *See also*, Appx2021 (claim chart).  The projecting edge also projects off outer circumference 535.  Marquis's arguments are meritless.



Marquis's convoluted and waived outer circumference/flat upper edge

argument (pgs.47-48) does not change this.

### C.    The '088 Patent

#### 1.  The "Projecting Edge" Limitation

Marquis is wrong about the projecting edge, as discussed above.  *Supra*,

Section IX.B.1.

Also, Marquis falsely claims (p.52) that "the patentee … argued that an

entirely flat upper edge (as illustrated in Figure 21) does not have a 'projection'" to

overcome an indefiniteness rejection.  In fact, the patentee/applicant stated:

"[w]ith respect to the Section 112[] rejection … claim 1 is a generic claim with

respect to Figures 21 and 31B, both of which disclose a flat upper edge."

Appx1202 (last paragraph).  Thus, Figure 21 **was** covered by the claim.



FIG. 21

Marquis also falsely alleges (p.52) that "the patentee argued that the 'projection' limitation … was covered by Figure 31b (Species I) alone. Appx1202." As noted above, Figure 21 was covered too. Appx1202.

And Marquis takes the argument on Figure 31b (Appx1202) out of context. Applicant stated that "the specification does, in fact, provide support for the disclosure wherein one or more projections are next to the slit, with the slit diagonal and the upper edge flat. This is shown, for example, in Figure 31B." *Id.* (last three lines); Appx420 (Figure 31B). Applicant referenced Figure 31B as an example of a projection <u>next to the slit</u>. Figure 21 also has a projection, but there the slit is in the middle of the ring (Appx449):



Indeed, Applicant stated that "the embodiment of the pending claims can include one or more projections next to the slit, such as when the slit is diagonal. With the slit diagonal, a projection can be provided next to the slit while maintaining the upper edge flat. The claims as amended are intended to cover such an embodiment." Appx1193. Thus, the claims cover an embodiment with a flat upper edge, and a projection next to a diagonal slit – *which describes the accused product (on the right) to a tee*:



**FIG. 2**

## X.     Marquis's Unclean Hands Allegation Is Meritless

Plaintiffs' filing of terminal disclaimers was not "unclean hands."

Defendants first alleged invalidity for double patenting during summary judgment (Dkt. 253 at 28-29), in an ambush attempt. They never raised their "defense" in four sets of answers and counterclaims; or invalidity contentions; or

responses to contention interrogatories; or their expert report.  Dkt. 273 at 23.  That was a waiver.

Nonetheless, the patentee filed terminal disclaimers (*id.* at 24).  Under 37 C.F.R. §1.321(c),[30] that "simply serves the statutory function of removing the rejection of double patenting and raises neither presumption nor estoppel on the merits of the rejection."  *Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 874 (Fed. Cir. 1991).  It eliminated a meritless issue.  "It is improper to convert this simple expedient of 'obviation' into an admission or acquiescence or estoppel on the merits." *Quad,* 946 F.2d at 874.

Infuriated, Defendants claimed that filing disclaimers was "unclean hands."

Marquis cites *Gilead* (Marquis Brief p.54), and alleges deficiencies in what was provided or told to the Patent Office.  *Gilead* explains that in "a case involving alleged deficiencies in communications with the PTO during patent prosecution … this court's inequitable-conduct decisions, *e.g., Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc), set important limits on conclusions of unenforceability through that doctrine."  *Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1240 (Fed. Cir. 2018).

---

[30]  A disclaimer may be filed during litigation.  *Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1347 (Fed. Cir. 2010).

But Marquis has already conceded that it does not assert a violation under *Therasense*.  CAFC Dkt. 26 at 64 (p.53).  Accordingly, its position is frivolous.

Furthermore, *Therasense* requires proof of specific intent (*Therasense*, 649 F.3d at 1290).  Below, Defendants did not allege this, much less cite any evidence.  Thus, the court rejected this defense.  Appx3683-3684.  Likewise on appeal, Marquis wholly relies on attorney argument, not evidence.

In fact, Applicant "submitted that [its] amendment overcomes the rejection without the need for a terminal disclaimer.  However, if a terminal disclaimer is still deemed to be required, please contact Applicant's counsel by telephone so that we can expeditiously address this requirement."  Appx1150.  The Examiner agreed – he dropped the requirement.  Applicant's offer to file a disclaimer if the Examiner wanted one is the opposite of intent to deceive.  And Plaintiff was not "inconsistent" later in eliminating a meritless issue.

Defendants also have no evidence of the required "but-for" materiality required by *Therasense*.

The applicable clear and convincing evidence standard (*Therasense*, 648 F.3d at 1290-1291) requires evidence creating "an abiding conviction that the truth of [Defendants'] factual contentions are 'highly probable'" such that "the material it offered instantly tilted the evidentiary scales in the affirmative when weighed against the evidence [Plaintiffs] offered in opposition").  *Colorado v. New Mexico*,

467 U.S. 310, 316 (1984). Again, there is __no__ evidence, much less evidence "instantly" tilting the evidentiary scales.

Moreover, the patents have the same priority date, so their patent terms are the same anyway. The disclaimer ensures they will remain co-owned, avoiding multiple inconsistent suits – which only protects defendants.

This is simply another meritless claim.

## CONCLUSION

Defendants repeatedly raise waived arguments and evidence, and disregard their high appellate burdens. In contrast, the court's thorough rulings, based on a compelling record and well-established law, reached just results.

The judgment should be affirmed.

Dated: April 29, 2024

*/s/ Morris E. Cohen*
Morris E. Cohen
Lee A. Goldberg
GOLDBERG COHEN LLP
1350 Avenue of the Americas, 3rd Flr.
New York, New York 10019
(646) 380-2087 (phone)
MCohen@GoldbergCohen.com
LGoldberg@GoldbergCohen.com

Donald L. Rhoads
Rhoads Legal Group PC
100 Park Avenue, Suite 1600
New York, NY 10017
(212) 390-8510 (phone)
drhoads@rhoadslegal.com

*Counsel for Plaintiffs-Appellees*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Federal Circuit Rule 32(a).  The brief contains 13,952 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) (the cover page, disclosure statement, table of contents, table of authorities, certificates of counsel, signature block, and proof of service), and Federal Circuit Rule 32(b) (the certificate of interest, and statement of related cases)

2.      This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The motion has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14 point font New Times Roman.

Dated:  April 29, 2024                 */s/ Morris E. Cohen*
                                        Morris E. Cohen
                                        GOLDBERG COHEN LLP
                                        1350 Avenue of Americas, 3rd Floor
                                        646-380-2084 (telephone)
                                        646-514-2123 (facsimile)
                                        mcohen@goldbergcohen.com

                                        *Counsel for Plaintiffs-Appellees*