**2023-1446, -1450, -2148 and -2149**

# United States Court of Appeals for the Federal Circuit

FOCUS PRODUCTS GROUP INTERNATIONAL, LLC, ZAHNER DESIGN GROUP, LTD., HOOKLESS SYSTEMS OF NORTH AMERICA, INC., SURE FIT HOME PRODUCTS, LLC, SURE FIT HOME DECOR HOLDINGS CORP., SF HOME DECOR, LLC,

*Plaintiffs-Appellees,*

– v. –

KARTRI SALES CO., INC., MARQUIS MILLS, INTERNATIONAL, INC.,

*Defendants-Appellants.*

*On Appeal from the United States District Court for the Southern District of New York in No. 1:15-cv-10154-PAE, Honorable Paul A. Engelmayer, Judge*

## REPLY BRIEF FOR DEFENDANT-APPELLANT KARTRI SALES, CO., INC.

PATRICE P. JEAN
EMMA L. BARATTA
LYNN M. RUSSO
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
patrice.jean@hugheshubbard.com
emma.baratta@hugheshubbard.com
lynn.russo@hugheshubbard.com

*Counsel for Defendant-Appellant Kartri Sales Co., Inc.*

JUNE 3, 2024

 COUNSEL PRESS    (800) 4-APPEAL • (326186)

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................1

    I.    There Was No Waiver.................................................................1

    II.    Venue.........................................................................................2

    III.    Noninfringement .......................................................................4

            A.    Trade Dress....................................................................4

                    1.    Genericism/Distinctiveness ...............................5

                    2.    Functionality......................................................6

                    3.    Invalid as subject matter of utility patents.....................10

            B.    Trademarks...................................................................16

                    1.    Registered HOOKLESS marks .......................17

                    2.    EZ ON Mark......................................................18

             C.    Patents .........................................................................19

    IV.    No Willfulness.........................................................................21

    V.    Attorneys' Fees.......................................................................26

                    1.    Exceptionality Determination.........................26

                    2.    Calculation.......................................................28

CONCLUSION .....................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Becton, Dickinson & Co*.,
   675 F.3d 1368 (Fed. Cir. 2012) ..........................................................7

*Bonito Boats v. Thunder Craft Boats*,
   489 U.S. 141 (1989)..............................................................12, 13

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010) ..........................................................9

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
   807 F.3d 1283 (Fed. Cir. 2015) ..........................................................23

*Compco Corp. v. Day-Brite Lighting, Inc.*,
   376 U.S. 234 (1964)..........................................................10

*Gilead Scis., Inc. v. Natco Pharma Ltd.*,
   753 F.3d 1208 (Fed. Cir. 2014*)* ..........................................................10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   579 U.S. 93 (2016)..............................................................22, 23

*Hubbell Inc. v. Pass & Seymour, Inc.*,
   883 F. Supp. 955 (S.D.N.Y. 1995) ..........................................................11

*June Med. Servs. L.L.C. v. Russo*,
   591 U.S. 299 (2020) ..........................................................5

*Keeco LLC et al. v. Kartri Sales Co.*,
   No. 1:23-cv-02003 (PAE)(SDA) (S.D.N.Y.) ..........................................................28

*Kellogg Co. v. Nat'l Biscuit Co.*,
   305 U.S. 111 (1938)..........................................................10

*Kohler Co. v. Moen Inc.*,
   12 F.3d 632 (7th Cir. 1993) ..........................................................12

*Krueger Int'l, Inc. v. Nightingale Inc.*,
   915 F. Supp. 595 (S.D.N.Y. 1996) ..........................................................11

ii

*Lon Tai Shing Co., Ltd. v. Koch & Lowy,*
  1990 U.S. Dist. LEXIS 19123 (S.D.N.Y. Dec. 14, 1990) ...........................11, 12

*In re Micron Tech., Inc.,*
  875 F.3d 1091 (Fed. Cir. 2017) ........................................................................2, 3

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,*
  164 F.3d 736 (2d Cir. 1998) ..................................................................................4

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,*
  317 F.3d 209 (2d. Cir. 2003) .........................................................................26, 27

*Qualitex Co. v. Jacobson Prods. Co.,*
  514 U.S. 159 (1995)......................................................................................6, 11

*Reese Pub. Co. v. Hampton Int'l Commc'ns, Inc.,*
  620 F.2d 7 (2d Cir. 1980) ....................................................................................5

*In re Rembrandt Techs. LP Pat. Litig.,*
  899 F.3d 1254 (Fed. Cir. 2018) .........................................................................28

*Safeco Ins. Co. of Am. v. Burr,*
  551 U.S. 47 (2007)...............................................................................................22

*Scott Paper Co. v. Marcalus Mfg. Co.,*
  326 U.S. 249 (1945)......................................................................................10, 12

*Sears, Roebuck & Co. v. Stiffel Co.,*
  376 U.S. 225 (1964)......................................................................................10, 16

*Singer Mfg. Co. v. June Mfg. Co.,*
  163 U.S. 169 (1896)............................................................................................10

*SRI Int'l, Inc. v. Cisco Sys., Inc.,*
  930 F.3d 1295 (Fed. Cir. 2019) ....................................................................22, 24

*Sure Fit Home Prods., LLC v. Maytex Mills, Inc.,*
  No. 21 CIV. 2169 (LGS), 2021 WL 2134863 (S.D.N.Y. May 26,
  2021) (vacated May 16, 2023).......................................................................9, 27

*Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.,*
  457 F.3d 1269 (Fed. Cir. 2006) ...........................................................................2

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
581 U.S. 258 (2017) ....................................................................2, 3

*Tiffany & Co. v. Costco Wholesale Corp.*,
971 F.3d 74 (2d Cir. 2020) ...............................................................17

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
532 U.S. 23 (2001) ...............................................................6, 7, 8, 15

*UCB, Inc. v. Actavis Lab'ys UT, Inc.*,
65 F.4th 679 (Fed. Cir. 2023) ........................................................4, 5

*Valu Eng'g Inc. v. Rexnord Corp.*,
278 F.3d 1268 (Fed. Cir. 2012) ....................................................6, 7, 8

*Walther v. Sec'y of Health & Hum. Servs.*,
485 F.3d 1146 (Fed. Cir. 2007) ...........................................................5

## Statutes and Rules

35 U.S.C. § 298 ........................................................................24

Fed. Cir. R. 36 .........................................................................27

iv

## INTRODUCTION

Kartri's opening brief ("KOB," docket item 46) sets out a series of errors that took place in the case below, including the case being held in an improper venue, improper claim construction, an improper grant of summary judgment, and evidence of functionality being improperly excluded from trial. The errors culminated in erroneous findings of liability and willfulness, and an erroneous award of attorney's fees. Rather than substantively engage with these issues, Appellees instead consistently argue that this Court should decline to consider Kartri's arguments, and accept the district court's findings and conclusions without question. The very first line of Appellees' April 29 responsive brief ("Resp.," docket item 56) sets forth Appellees' circular approach: "Plaintiffs draw primarily from the judicial findings in the court's 168 page post-trial opinion." (Resp. at 5). But the district court's post-trial opinion is one of the orders challenged in this appeal.

As set forth below, this Court can and should address the merits of Kartri's arguments and, as respectfully requested in Kartri's opening brief, this Court should vacate the Appealed Orders, dismiss or transfer the case, and hold that the purported unregistered trade dress asserted by Appellees is invalid as a matter of law.

## ARGUMENT

## I.     THERE WAS NO WAIVER

A recurring theme in Appellees' brief is the argument that this Court should close its eyes to the merits of Appellants' positions, and to the errors committed

1

below, on grounds of purported waiver.  Appellees' waiver-related arguments fail for two reasons.  First, Appellees erroneously claim that Appellants waived arguments by not interposing affirmative defenses or submitting evidence below on issues as to which **Appellees**, and not Appellants, bore the burden.  *See Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.*, 457 F.3d 1269, 1275-276 (Fed. Cir. 2006) (holding that party "did not waive its arguments based upon the knowledge requirements of § 2567, because [it] did not bear the burden of establishing the element of knowledge at trial").  Second, many arguments that Appellees represent were **not** raised below in fact **were**.  Because these instances are numerous, Kartri will address the most significant examples in this Reply.  If the Court has further questions about instances of purported waiver, Kartri will be prepared to discuss at oral argument.

## II.  VENUE

On the subject of venue, Appellees echo the district court's error (Resp. at 46-47) of faulting Appellants for not taking action to transfer venue *prior* to the Supreme Court's *TC Heartland* decision—a position that is incorrect under *Micron*.  KOB at 33-34.  The relevant question is not what Appellants did in the period before *TC Heartland,* or in the "eight years" (Resp. at 46, 51) between the commencement of the litigation and today.  Rather, the sole question now is whether the district court—after having mistakenly concluded that pre-*Heartland* filings can waive

*Heartland* objections—abused its discretion in concluding that Kartri "simply took too long" (Appx12) to raise the issue by not moving until four months after the *TC Heartland* decision issued.

Kartri again respectfully submits that when trial was not even on the horizon, and new parties and new causes of action were still being added, four months was not "too long."  As Kartri explained when making its motion, the availability of a *Heartland* objection to Kartri during those four months—before this Court's *Micron* decision addressed the issue—"was not clear." Appx804-805.  Once Appellees announced that they were amending their complaint, however, Appellants could file a new answer and thus had an opportunity to challenge venue.  Appx755-756. (This accords with the district court's observation, quoted at Resp. 48, that if "the complaint in this action were filed today," "Kartri would have had 21 days from today" to raise a *TC Heartland* objection.).  As soon as Kartri believed the issue of venue was "reopen[ed]" (Appx755) due to the amended complaint, it objected to venue in the Southern District of New York as **not** appropriate or convenient.[1] Appx814, Appx808, Appx859.

---

[1] Appellees' footnote 17 (Resp. at 47) incorrectly argues that Kartri did not contest venue in its October 2017 Answer.  That Answer expressly denied allegations that venue was proper and argued that Kartri had never waived venue objections.  *See* Appx817-818, ¶1.

## III.   NONINFRINGEMENT

Kartri's appeal brief explained that the Appealed Orders rest on misapprehensions of the scope and purpose of intellectual property laws.  KOB at 38-39.  Appellees' response mirrors those same fundamental misapprehensions, conflating word marks and products, failing to distinguish between patented invention and trade dress, and fashioning an illegitimate concept of "holistic" willful infringement.  Nothing in Appellees' responsive brief resolves the issues raised by Kartri, or justifies the district court's errors.

### A.   Trade Dress

Appellees' position that the trade dress distinctiveness and functionality issues in this case are subject only to review for clear error in the district court's factual findings fails for several reasons.  First, a grant of summary judgment—here, the functionality ruling—is reviewed *de novo,* even if it relates to a determination that would have been reviewed for clear error after trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 745 (2d Cir. 1998) (on summary judgment, "the district court's task was to determine whether there were issues of fact concerning the distinctiveness of … trade dress.  This question is subject to *de novo* review.").  Second, a district court applying the wrong legal standard—here, as it did in evaluating genericism and distinctiveness—"may be corrected as a matter of law." *UCB, Inc. v. Actavis Lab'ys UT, Inc.*, 65 F.4th 679, 687 (Fed. Cir. 2023) (citation

omitted); *Walther v. Sec'y of Health & Hum. Servs.,* 485 F.3d 1146, 1152 (Fed. Cir. 2007) (remand required where findings were based on incorrect legal standard); *see also June Med. Servs. L.L.C. v. Russo,* 591 U.S. 299, 390 (2020) (Alito, J. dissenting) ("A finding based on an erroneous legal test is invalid; it cannot be sustained under the 'clearly erroneous' rule.").

As such, Appellees' strategy of reciting and praising the district court's findings and conclusions does not address the issues actually presented to this Court: whether the genericism holding was erroneous *under the correct legal standard*, whether there was any issue of fact as to functionality, and whether the trade dress is invalid as a matter of law.

### 1.   Genericism/Distinctiveness

Appellees argue waiver on grounds that "Kartri did not plead trade dress genericism." Resp. at 35.  However, because the asserted trade dress is unregistered, the burden was on **Appellees** to show that their trade dress was distinctive, and not generic (*see* KOB at 46-47); *see also Reese Pub. Co. v. Hampton Int'l Commc'ns, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980) ("plaintiff must bear the burden of proving that its unregistered mark is not generic.").  Appellants raised Appellees' failure to carry their burden on summary judgment (*see* Appx2440-2441); the district court, on reconsideration, denied summary judgment and ultimately held, erroneously, that

the purported trade dress was distinctive, and not generic. Appellants have every right to challenge that determination on appeal.

On the merits of Kartri's arguments, Appellees recap the district court's self-invented test for genericism (Resp. at 36-37) instead of using the correct legal standard. *See* KOB at 48-49.

### 2.    Functionality

Contrary to Appellees' assertion (Resp. at 31), Appellants **did** raise "utilitarian functionality arguments based on *TrafFix*" to the court below. The argument appeared in Appellants' summary judgment briefing, citing to this Court's decision *Valu Engineering Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1276 (Fed. Cir. 2012) (*see* Appx2850-2851), and was then made a second time, in more detail and citing *TrafFix* directly, in a motion in limine:

> For a product feature to be effective as trade dress one must take into account whether any of the product features, such as the ring or the slit, are features that are dictated by the functions they perform. Then where the combination of features as a whole is functional, the trade dress is not protectable. *Traffix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23 (2001); Qualitex Co. v. Jacobson Products Co., Inc.,* 514 U.S. 159 (1995); *Valu Engineering Inc. v. Rexnord Corp.,* 278 F.3d 1268 (Fed. Cir. 2002). When the entire combination is functional, it does not matter whether there are alternatives; the product design is unprotectable. *Traffix Devices,* at 32.

Appx3406-3407.

Appellees try to recast the district court's decision as not being based on alternative designs (Resp. at 31-32), perhaps in recognition of the fact that under the

correct legal standard, alternative designs do *not* negate a finding of functionality. *See In re Becton, Dickinson & Co.*, 675 F.3d 1368, 1376 (Fed. Cir. 2012) ("the feature cannot be given trade dress protection merely because there are alternative designs available") (quoting *Valu Eng'g*, 278 F.3d at 1276); *TrafFix*, 532 U.S. at 32-33.  However, review of the district court's opinion makes plain that it did in fact rely inappropriately on alternative designs.  It explained its understanding of the legal standard as: "[E]ven where a design operates to perform a function, the trade dress is not functional if there are many alternative designs that could perform the same function" (Appx125, internal quotations and alterations omitted), and the *only* evidence it identified as supporting its conclusion of nonfunctionality was: "Plaintiffs have since demonstrated the availability of alternative designs to theirs." *Id.*

Appellees go on to argue that Appellants did not point to evidence of functionality at the summary judgment stage, but this is incorrect: in the first round of summary judgment briefing, Appellants pointed to Appellees' utility patents as "evidence of the functionality of the design." Appx2850.  When Appellees argued nonfunctionality on reconsideration, Appellants also pointed to Appellees' own advertising which touted the functional benefits of the purported trade dress's features.  Appx2978, citing Appx2950.  Considering that Appellees (who had the burden of showing nonfunctionality) relied primarily on the presence of alternative

designs to support their position, while Appellants offered (1) "strong evidence" of functionality in the form of utility patents (*see TrafFix*, 532 U.S. at 29-30), as well as (2) additional evidence of functionality from Appellees' own advertising, the district court should have granted summary judgment of functionality in Appellants' favor. At the very least, it should have held that there was an issue of fact to be resolved at trial. The grant of summary judgment of nonfunctionality *for Appellees* is insupportable, and clearly reversible error.

Moreover, the exclusion of functionality issues from trial—at the request of Appellees, who knew that another judge in the district had since found the trade dress functional—was also error. It rendered the district court's "post-trial factual findings confirm[ing] nonfunctionality" (Resp. at 8) meaningless.

Appellees also try to muddy the water by raising the distinction between "the English word 'functional' with the legal concept of design 'functionality.'" Resp. at 32. But this Court has been perfectly clear: that latter concept, *de jure* functionality, "means that the product has a particular shape because it works better in this shape." *Valu Eng'g*, 278 F. 3d at 1274 (internal quotation marks omitted). The shape of a shower curtain with slitted rings rather than protruding hooks has been consistently claimed by Appellees, and found by the district court, to "work better" than ordinary shower curtains. *See, e.g.,* Appx1354 1:47-61 ('232 Patent describing benefits); Appx421 1:45-51 ('248 patent calling configuration "useful"); Appx2950

(Appellees' advertising touting functional benefits); Appx216-217 (post-trial order describing same).

Finally, Appellees argue that the *Maytex* opinion analyzing functionality should be disregarded because it occurred "before discovery," and currently has "no precedential value." Resp. at 33-34. However, Judge Schofield compared the utility patents to the text of the claimed trade dress; no extrinsic materials were needed. *See Sure Fit Home Prods., LLC v. Maytex Mills, Inc.*, No. 21 CIV. 2169 (LGS), 2021 WL 2134863 at *6 (S.D.N.Y. May 26, 2021) (vacated May 16, 2023) ("The [utility] patents themselves explain how these features are driven by their functionality."). Her opinion may not currently be binding since Appellees procured a vacatur in 2023 based on settlement, but her analysis remains persuasive. *See, e.g., Brown v. Kelly*, 609 F.3d 467, 477 (2d Cir. 2010). Indeed, on April 8, 2024, Judge Schofield's opinion was cited by the USPTO in an Office Action refusing Appellees' trade dress as unregistrable for both functionality and lack of distinctiveness.[2] This shows that the *Maytex* opinion still has value.

---

[2] *See* https://tsdr.uspto.gov/documentviewer?caseId=sn98114472 (April 8, 2024 Office Action refusing Appellee Zahner Design Group Ltd.'s application for registration of the asserted trade dress (the "Zahner Trade Dress" application), concluding that Appellees' '232 and '248 Patents "claim[] the design features at issue."). The refusals are consistent with Kartri's arguments, and inconsistent with Appellees' positions on willfulness and trade dress validity (*e.g.* Resp. at 29, heading VI.A "The Trade Dress is Strong."). The Office Action post-dates Kartri's January 24, 2024 opening brief and therefore could not have been cited therein.

What does *not* have value, however, is the design patent (Appx918-923) that Appellees reference at Resp. at 34.  That design patent, D746,078, was cancelled by the USPTO as invalid and void *ab initio* on February 28, 2023, after the patent was rejected on reexamination and the rejection affirmed by this Court.  Appx5109-5110; KOB at 1, Statement of Related Cases identifying CAFC Appeal No. 22-1026.

### 3.    Invalid as subject matter of utility patents

Contrary to Appellees' statement on p.38, Kartri's arguments regarding the ineligibility of the subject matter of utility patents for trade dress protection were also made below, at least twice.  *See* Appx2850-2851; Appx3404-3406.

Appellees' arguments on the substance of the issue all fail.  They argue that patents and trade dress are "legally distinct regimes," but do not address the clear and binding precedent governing the interplay between those regimes—*i.e. Kellogg, Singer, Sears* and *Compco, Gilead,* and *Scott Paper Co.* (*see* KOB at 53-54)—which provide that  a patentee "may not exclude the public . . . by resorting to the trademark law and registering as a trademark any particular descriptive matter appearing in the specifications, drawings or claims of the expired patent."  *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 256 (1945) (emphasis added).   Appellees' argument that trade dress rights exist regardless of whether any patent exists is antithetical to the public availability of inventions formerly protected by patents.

10

In attempting to justify trade dress protection for the subject matter of their **utility** patents, Appellees cite the following cases which discuss the interplay between trade dress and **design** patents—a significant distinction, as each case acknowledges.[3]

- *Hubbell* concluded that trade dress protection may be available to "products for which **design** patents have expired," but acknowledged that "**patents related to function** may **not** be protected past the duration of the patent." *Hubbell Inc. v. Pass & Seymour, Inc.* 883 F. Supp. 955, 959, 960-61 (S.D.N.Y. 1995) (citing *Qualitex Co.*, 514 U.S. at 159) (emphasis added).

- *Krueger* likewise involved a design patent and specifically acknowledged that "[a] design patent (**unlike a utility patent**) is granted for a product's non-functional, ornamental features." *Krueger Int'l, Inc. v. Nightingale Inc.*, 915 F. Supp. 595, 604 (S.D.N.Y. 1996) (emphasis added).

- *Lon Tai Shing,* also involving design patents, characterized the *Sears-Compco* doctrine as applying to "industrial design[s] that **would not warrant design patent** protection," and noted that "'functional' product features or designs will **not** receive trademark or 'unfair competition' protection" due to "the policies underlying federal **utility patent** law." *Lon Tai Shing Co., Ltd. v. Koch & Lowy*, 1990 U.S.

---

[3] Appellees ignored this critical distinction below as well as on appeal. *See, e.g.*, Appx3795 (opening statement at trial, arguing *Krueger*, discussed *infra*).

Dist. LEXIS 19123 at *111-113, *77-78 (S.D.N.Y. Dec. 14, 1990) (emphasis added).

- In *Kohler*, the court concluded that ornamental or aesthetic features could be treated *differently* from the functional features protected by utility patents with respect to their eligibility for trademark protection; it was criticized at length by the dissent for so doing. "**No one questions that functional features not protected by a valid utility patent, or for which the patent has expired, are open to everyone to copy.** Trademarks may not be acquired to defeat the right to copy. Yet [the majority held] that this should not also be the case with respect to nonfunctional features when design patents are not available to protect them." *Kohler Co. v. Moen Inc.*, 12 F.3d 632, 648 (7th Cir. 1993) (Cudahy, J., dissenting) (emphasis added).

Kartri does not argue that the purported trade dress *became* "unenforceable" because the separate protection offered by Appellees' patents expired (Resp. at 39), but rather, that the purported trade dress could *never* be claimed as a mark because it is a functional design comprising solely "descriptive matter appearing in the specifications, drawings or claims" (*Scott Paper,* 326 U.S. at 256) of Appellees' utility patents. Appellees' citations to design patent cases are inapposite, and their selective quotations from discussion in *Bonito Boats v. Thunder Craft Boats* (489

U.S. 141 (1989); a case which accords with Kartri's position, and not Appellees')
do not change the state of the law.

Appellees also argue that their patents and purported trade dress are not "co-extensive," in that certain "configurations" could "fall within the patents but not the Trade Dress, and vice versa" (Resp. at 38). This argument is unavailing. Contrary to Appellees' characterization of the asserted trade dress as "requir[ing] various aesthetics" not found in the patents (Resp. at 38), the purported trade dress includes just four broad elements, each plainly visible in the drawings of the '232 Patent and also described in its claims and/or specification. Specifically (*see* Appx209):

> (1) a shower curtain wherein the curtain lacks any hooks protruding above the upper edge of the curtain, so that Plaintiffs' shower curtain provides the visual appearance of an essentially "neat" and "orderly" upper edge;[4]
> (2) and wherein the shower curtain has a row of rings along the upper portion of the shower curtain, those rings being attached to the material of the shower curtain such that the bottom surface of each ring (on one or both sides of the shower curtain) is essentially co-planar with the material of the shower curtain, also providing an essentially "neat" and "orderly" appearance;
> (3) wherein each ring includes a slit or gap in the ring;
> (4) and wherein the shower curtain's rings or pairs of rings, and the associated slits or gaps, are each fixed in place on the shower curtain and provide an organized and symmetrical repeating visual pattern along the top width of the shower curtain.

---

[4] The Court should note that contrary to Appellees' suggestion (Resp. at 38), "a 'neat' and 'orderly' upper edge" is ***not*** identified as a separate "aesthetic" requirement, but rather, as the necessary consequence of Plaintiffs' shower curtain lacking protruding hooks.

The three figures of the '232 Patent, reproduced below, illustrate that the preferred embodiments disclosed in the patent have each of those features.



Appx1353. In particular, as to element (1), the curtain of Figure 1 of the '232 Patent has integrated, paired-slit openings; Figure 3 shows that the curtain is hung on a rod directly via the paired openings, without hooks, providing a neat and orderly upper edge. *See also* Appx1355 at 3:60-4:2. As to element (2), Figures 1 and 2 show how the claimed curtain has a row of rings along the upper portion of the shower curtain that are attached to the material of the shower curtain such that the bottom surface of each ring is co-planar with the material of the shower curtain and provide a "neat" and "orderly" appearance. *See also id.* 4:10-11. As to element (3), Figure 1 shows that each ring has a slit or gap. *See also id*. 4:18-30. As to element (4), Figures 1 and 3 show that the shower curtain's pairs of rings, and the associated slits or gaps,

are fixed in place on the shower curtain and provide an organized and symmetrical repeating visual pattern along the top width of the shower curtain. *See also id.* 3:40-61.

Indeed, Appellees' later '248 Patent neatly summarizes the '232 as claiming a curtain with "a series of reinforced openings with slits provided between alternating paired sets of holes, thereby allowing the hanging material to be attached over the rod without the need for threading or hooks." Appx421. As such, the broad elements of the purported trade dress describe the matter disclosed in the '232 Patent, with no narrowing aesthetic requirements. The hypothetical raised by *TrafFix*, that a party might seek to protect "arbitrary, incidental, or ornamental aspects of features of a product found in the patent claims, such as arbitrary curves in the legs or an ornamental pattern painted on the springs" (*TrafFix*, 532 U.S. at 34), is plainly not implicated here. Appellees seek to exclude the public from practicing their formerly patented invention by broadly claiming it as their trade dress, which is not permitted.[5]

Regarding Appellees' arguments about equity: it is wholly irrelevant that Kartri "spurned" the "opportunity" to go into business with Appellees in the 1990s.

---

[5] *See* Appx4125 (testimony from former General Manager of Hospitality at Focus that Focus did not anticipate any competitor "products using [the] '232 technology" coming onto the market following expiration of the '232 patent, because "the overall look and design of that curtain[] was still protected by trade dress[.]")

Resp. at 42.   Appellees '232 Patent entitled them to a limited time period of exclusivity, which Kartri did not violate.  The Supreme Court has made clear that it is not wrongful for Kartri, or any party, to enter the market with its own branded product practicing expired patents, or falling outside the bounds of patent claims, even if it "looks like" (Resp. at 20) products sold or popularized by a competitor. *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 231 (1964) ("What Sears did was to copy Stiffel's [unpatented] design and to sell lamps almost identical to those sold by Stiffel.  This it had every right to do under the federal patent laws.  That Stiffel originated the pole lamp and made it popular is immaterial.")  Appellees now seek to extend their monopoly forever by claiming trade dress rights over the functional shower curtain design disclosed in their patents.  It would not be equitable to allow them to perpetually exclude or extort competitors with this strategy.

### B.    Trademarks

While no damages were awarded specifically for the purported infringement of HOOKLESS and EZ ON marks in this case, the purported infringement of those marks formed an integral part of the district court's (erroneous) finding of "holistic" bad faith, which resulted in the trebling of damages for willfulness and an award of attorney's fees.  It also resulted in an injunction that chills Kartri's use of the English word "hookless" in its normal sense to describe hook-free shower curtains, forcing an unjustified hypervigilance about avoiding that normal industry term.  As such, it

is important to Kartri to address these erroneous findings even though no monetary damages were awarded.

### 1.    Registered HOOKLESS marks

Kartri argued that the district court was wrong to find infringement of the registered HOOKLESS marks because it is not wrongful to use the English word "hookless," as Kartri did in accordance with industry custom, in its dictionary sense to convey that a shower curtain lacks hooks.  KOB at 41-42.  Contrary to Appellees' claim of waiver, Kartri made this point in summary judgment briefing below, *see* Appx2442-2443.  Appellees' response that their registered HOOKLESS marks have distinctiveness does not negate this point.  *See Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 89, 93-94 (2d Cir. 2020) (Vacating summary judgment of infringement; holding that the English word "tiffany" could be used in its dictionary sense to denote a ring setting style *notwithstanding* the existence of the famous word mark TIFFANY).

Appellees' claim that "Kartri routinely marketed its curtains as HOOKLESS® products in its communications" (Resp. at 26) is patently false, and not supported by the order Appellees cite to or by the evidence reviewed within it.[6]  Relatedly,

---

[6] In some instances the district court seemed to misunderstand the evidence it cited—for example, the court's statement that certain buyers "asked Kartri for Focus's products" (Appx234), is not supported by the cited testimony, which indicated that

Appellees **misquote** a Kartri email discussed in that order; their quotation "version of HOOKLESS called EZY Hang" (Resp. at 27) should in fact have read "version of hookless called EZY Hang." Appx5488. The evidence showed Kartri using the English word hookless in its dictionary sense in certain correspondence with customers, ***not*** "market[ing] its curtains as HOOKLESS® products."

Appellees also repeat the district court's error in conflating the registered HOOKLESS mark with other intellectual property, complaining *inter alia* that Kartri "made [its products] look like Plaintiffs'" and quoting the incorrect, invented finding of "holistic" bad faith in its discussion of the registered HOOKLESS marks. Resp. at 27.

Contrary to Appellees' position, it is not necessary for a defendant to challenge every single *Polaroid* factor in order to prevail. Appellants showed how the district court's analysis was erroneous; it should be reversed.

      2.    <u>EZ ON Mark</u>

Regarding Appellees' lack of standing to assert the EZ ON Mark, Appellees merely repeat the district court's illogical interpretation of the 2012 Carnation Agreement, which Kartri has already debunked. KOB at 44-45. They have no

---

those buyers were interested in products "that they **can't get** from Focus." Appx2313-2314 (emphasis added).

substantive answer for the failure of the 2012 Carnation Agreement to transfer goodwill.  (They erroneously state that the goodwill argument "was not raised below" (Resp. at 29), but it was.  *See* Appx2851, arguing "The Carnation Agreement (Dkt 224-1) does not transfer to Plaintiffs' predecessor (nor even mention) the goodwill of any Carnation product, and consequently no valid transfer occurred of any trademark rights, including the rights to the appearance of Carnations' shower curtain.").  They fail to address the fact that it was Carnation, not Appellees, who premiered the EZ ON product by no later than 2008, or the fact that it was Carnation who registered the word mark EZ ON in 2017.  They have no substantive answer for the fact that ownership of the EZ ON Mark only passed to Appellees in 2021, pursuant to assignment agreement registered with the USPTO.[7]  Appellees lacked standing to assert EZ ON at relevant times below, and thus all holdings regarding this mark should be vacated.

### C.    Patents

Kartri set forth reasons why the accused curtain rings did not infringe the patents (KOB at 40-41).  In response, Appellees argue waiver and mischaracterize

---

[7] Instead they again ask this Court to ignore the facts.  The 2021 assignment that at last transferred ownership of the EZ ON Mark from Carnation to Appellees was filed below, and discussed by the district court in its post-trial order.  Appx223, Appx251-252.  That the district court opted to disregard it in making its rulings does not render Kartri's arguments "not cognizable" (Resp. at 29).

the record.  In particular:

**Waiver.**  Appellees' assertions of waiver are again contradicted by the record. As one example, contrary to Appellees' assertion on Resp. at 52, Appellants *did* argue below that only certain "discrete components" of the infringement allegations had been decided and that other claim terms remained open to dispute.  *See* Appx2969-2971 (section entitled "Summary Judgement Was Granted For Discrete Elements Of Plaintiffs' Patents Only").  As another, contrary to Appellee's assertion at Resp. 56, Appellants *did* argue below that the "ring" of the '248 and '609 Patents did not encompass a flat top (Appx1856; Appx1859); and the accused product did not infringe the '248 Patent for at least that reason (Appx1901-1902).

**"Approximately horizontal" slit dispute.**  Appellees mischaracterize the record regarding this component of claim 1 of the '248 Patent, as well as incorrectly argue waiver.  Appellants agree that the slit of Fig. 20 *does* include an approximately horizontal component, as described by Appellees during Markman (Appx1866-1867).  What Appellants argue—and argued below—is that an angle of 22 degrees, as found in the slit of the accused product, falls outside the claim language. Appx2409-2411; *see also* Appx1869-1870 (Court "imagin[ing]," correctly, that even "an incline that's at 5 percent or 7 percent" (a much *smaller* incline than found in the slit of the accused product) could be called "outside the bounds" of "nearly horizontal").

**"Projecting edge" drawing.** The drawing in Resp. at 79 and 84 is not a figure from any patent at issue here, but rather, is a drawing from Appellees' claim chart for a different accused product in a different litigation. Its use as a point of comparison to Appellants' accused product is irrelevant.

## IV.  NO WILLFULNESS

It is undisputed that: (1) when Kartri named its product EZY Hang and began selling in 2013, it had never heard of any mark EZ ON (Appx4422-4425; Appx4494-4495); (2) Kartri deliberately avoided using "the word 'hook' or anything 'hookless'" in its product name in order to "give [Appellees] the respect of the name," (Appx4424) (3) Kartri's initial 2015 investigation of the term EZ ON revealed a product sold by *Carnation*, and not Appellees (Appx236; Appx4494-4495); and (4) Appellees did not advise Kartri of their purported trade dress until March 2016 (Appx561-562).

Given that timeline, Appellees' claim (Resp. at 18-19) that in 2013 Kartri deliberately named its product EZY Hang to mimic EZ ON (a Carnation mark it had never heard of) and designed its product to look like the EZ ON product (a Carnation product it had never seen), as a strategy to somehow capitalize on intellectual property owned by *Appellees*—who had no public affiliation with Carnation—is

illogical.[8]  And as Appellees underscored in their brief (Resp. at 20), that illogical premise underlies the district court's illegitimate finding of "holistic" bad faith.

Appellees do not even address the district court's improper conglomeration of patents and trade dress, or Appellants' argument that they cannot be held liable for "willfully" infringing rights that they knew nothing about.  The court held that a period of willful trade dress infringement began in February 2015 even though it is undisputed that the purported trade dress was not described to Appellants until March 2016.  This blatantly violates governing willfulness law, including the *Safeco* case that Appellees rely on.  *See Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 579 U.S. 93, 106 (2016) ("Nothing in *Safeco* suggests that we should look to facts that the defendant neither knew nor had reason to know at the time he acted."); *see also SRI Int'l, Inc. v. Cisco Sys., Inc.,* 930 F.3d 1295, 1309 (Fed. Cir. 2019) (where party "was aware of the patents in May 2012," "we do not see how the record supports a willfulness finding going back to 2000.").

**<u>No willful infringement of trade dress</u>**.  Since being advised of Appellees' purported trade dress in 2016, Kartri has *always* disputed its validity, in Answers (Appx676, Appx818, Appx820), at the summary judgment stage (Appx2851), in

---

[8] Appellees claim that they possessed rights in the Carnation product pursuant to a **private** 2012 agreement between them and Carnation.  They have never explained how Kartri could be expected to guess such a connection.

motions in limine (Appx3406-3407), and through trial via its proposed findings (Appx4867-4868). Facts showing that Kartri's position was reasonable—and that the district court should have known it—show that the district court erred. They are not red herrings (Resp. at 21)[9]. The purported trade dress has been found invalid as functional and/or generic by two separate courts, and now has been refused as unregistrable *by the USPTO* as both functional *and* lacking distinctiveness. *See* n. 2, *supra*. Kartri's invalidity position was more than reasonable, and while that may no longer be dispositive following *Halo*, (as it was previously; *see, e.g., Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1301 (Fed. Cir. 2015)), it is still relevant. *See Halo*, 579 U.S. 93 at 114 (Breyer, J. concurring) (in reviewing a willfulness determination, "the Federal Circuit may take advantage of its own experience and expertise" to evaluate the "reasonableness of a defense.").

**No willful infringement of patents**. Appellees repeat, but do not explain or defend, the district court's erroneous conclusion that mere receipt of a cease-and-desist letter rendered Appellants willful (Resp. at 21-22).

Kartri does not "claim[] to be puzzled … that the court did not credit its counsel's letter" (Resp. at 23). Rather, the puzzling fact is that the district court's

_____

[9] Additionally, Kartri categorically denies Appellees' bizarre statement in the same paragraph that "Kartri … does not rebut that it copied, and tried to deceive customers." *See, e.g.*, KOB at 13-14, 44.

post-trial opinion indicated that Kartri did not seek counsel (Appx355-356[10]), when in fact, the court was well aware that Kartri **did**. *See* Appx356 n.89 (court acknowledging that Kartri conferred with counsel and "came away with the understanding that [it was] complying with the law"); Appx3102 (filed agreed-upon exhibit list identifying back-and-forth counsel letters); Appx6902 (Appellees' letter to Kartri, cited at Resp. 24, acknowledging receipt of Kartri's counsel's "non-infringement" correspondence). Kartri choosing not to interpose an advice-of-counsel defense is no justification for the district court to hold Kartri willful on the basis of a proposition that it knew to be contrafactual. And that is wholly aside from the fact that under 35 U.S.C. § 298, the decision of whether or not to seek counsel and whether or not to present an advice of counsel defense cannot be used to prove willful infringement at all. *See SRI Int'l*, 930 F.3d at 1309; *contra* Appx355-356 ("In contrast, Kartri's infringing conduct after receiving the cease-and-desist letter was clearly willful. There is no evidence that Goskowski received, let alone, reasonably relied upon, advice of counsel to the effect that it was lawful to market Ezy Hang.")

---

[10] This error was then repeated in the district court's attorneys fees order. *See* Appx381 (recounting that after receiving Appellees' cease-and-desist letter, "Kartri and Marquis stood pat, disregarding the letter and outrageously declining to investigate Focus's representation to have superior rights.").

Appellees request that this Court strike certain of the noninfringement correspondence between counsel because it was not entered into evidence. Resp. at 23. They also ask this Court to additionally strike the "subsequent correspondence"—letters that *were* moved into evidence, by Appellees themselves,[11] with no explanation for how or why striking those admitted letters would be appropriate. *Id.* This request should be denied. Whether or not this Court decides to study the contents of the two letters not formally admitted into evidence at trial (Appx6893-6894 and Appx6898-6901), the contents of the letters that *were* admitted (Appx6895, Appx6902) are sufficient to make Kartri's point: Kartri sought counsel and disputed infringement through counsel. The district court's suggestions to the contrary are contradicted by the record.

For all of these reasons, the maximally-punitive trebling of damages for willfulness based on an insupportable finding of "holistic" bad faith cannot stand. Appellees' recitation of the circumstances that caused the district court to come to that "holistic" conclusion is unavailing.

---

[11] *See* Appx3730 at ¶46, trial declaration of David Zahner identifying letters designated PTX 595, 597, and 599; Appx3840 (court receiving "all the exhibits that are referenced" in that declaration into evidence).

## V.    ATTORNEYS' FEES

Appellees do not address the trial court's evaluation of the strength of *Plaintiffs'* litigation position rather than *Defendants'* as called for by Supreme Court and this Court's precedent (KOB at 59-60). Appellees instead devote their argument to reiterating, expounding on, and adding to the district court's list of Appellants' purported litigation failures. Appellees' attacks are unjustified, in some cases outright incorrect,[12] and in any event fail to show a "vexatious litigation strategy" as could justify an exceptional case finding.

### 1.    Exceptionality Determination

Kartri previously briefed the position that a series of litigation deficiencies are not equivalent to a "vexatious litigation strategy" (KOB at 60-61). Appellees' citation to *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,* 317 F.3d 209, 222 (2d. Cir. 2003) does nothing to undermine Kartri's position. First, that case is superseded by the more recent governing Supreme Court and Federal Circuit law regarding the

---

[12] Comparison of Appellees' statements at Resp. 13 to the evidence they purport to characterize shows that Appellees have overstated and even misstated the record. *Compare* Resp. at 13 ("Kartri provided **false sales data** at trial," (emphasis in original)) *with* Appx4201-4202 (Appellees' expert "suspect[ing]" that "accounting or identification of the accused products, perhaps, was leading to underreporting of those revenues" in some unspecified amount.). *Compare* Resp. at 13 ("Kartri's President falsely testified that in 2013 she received copies of Chinese patents to the accused product"), *with* Appx4451-4454 (initial testimony) and Appx4469 lines 19-23 (redirect testimony specifically clarifying the previously confused—not false—testimony on this topic).

award of attorney's fees in exceptional cases (*see* authorities cited in KOB at 58-60). Second, it is a case that involved a party "seek[ing] to prevail in trademark litigation through fraudulent means," namely, intentionally generating a fraudulent label along with a fraudulent printer's invoice to support a lie as to the date they had first used the fake label in question. *Patsy's Brand*, 317 F.3d at 214. That case hardly supports the proposition that fees can be awarded any time a defendant's witnesses are "impeached at trial" (Resp. at 14), or any time a defendant falls short of the court's preferred litigation standards by missing deadlines or pressing arguments to which the court is not receptive. As Kartri previously argued, it is error to equate these (regrettably) ordinary circumstances with exceptional "abusive litigation conduct" as could justify a fee award.

In addition to the litigation conduct discussed by the district court, Appellees also seek to add several new justifications that were not part of the district court's opinion. None is legitimate. First, regarding Appellees' repeated claim of "peddling [] falsehood" (Resp. at 16, 33) in connection with the *Maytex* opinion: Kartri's statements were not false. Kartri stated—***correctly***—that in the *Maytex* case Judge Schofield issued a detailed opinion concluding that Appellees' purported trade dress was functional, and that her order was later affirmed by this Court. Appx5097; Appx5099. Appellees then responded by arguing that the Rule 36 affirmance was not significant because they had appealed the order on grounds *other than*

27

functionality. Appx5102. Kartri acknowledged and responded to that argument in its subsequent motion to dismiss related case *Keeco LLC et al. v. Kartri Sales Co..*, 1:23-cv-02003 (PAE)(SDA) (S.D.N.Y.), but in any event Kartri's original statements were and are correct.

Appellees' argument regarding proposed expert Paul Hatch (Resp. at 16) is also not in the district court's opinion, unexplained, and unsupported by authority. Mr. Hatch's report identifies him as an expert in "industrial design" who understands how customers "perceive[] and appreciate[] the visual appearance and or functional merits of a product's design," Dkt. 253-5 at 1-2. His testimony was excluded by the Court following *Daubert* motion (Appx164), a common occurrence in intellectual property litigation. The court did not suggest, and Appellees have not shown, that offering him as a witness in the first place was in any way wrongful.

### 2.    Calculation

Contrary to Appellees' claim of waiver (Resp. at 18), Kartri argued below that any award must be "compensatory, not punitive," and "may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." Appx5100, citing *In re Rembrandt Techs. LP Pat. Litig.,* 899 F.3d 1254, 1278 (Fed. Cir. 2018). Kartri's argument on appeal that the district court's award cannot be justified under a rationale of compensation in this case remains unrebutted.

28

Regarding the question of missing documentation, it is appropriate—not "petty" (Resp. at 17)—for Kartri to point to a year's worth of completely unacceptable invoices as well as block-billing in *all* invoices as reasons why the documentation provided by Appellees was inadequate.  KOB at 62-63 (citing authorities).  Moreover, Kartri believes that the district court's failure to notice these deficiencies on its own, and its ignoring Kartri's attempts to point them out, provides further, strong support for the proposition that the district court's discretion here was exercised inappropriately.

Appellees' criticism that Kartri "disrespects the experience of a seasoned federal judge" (Resp. at 17) by making these points is absurd.  It is not wrongful for litigants to respectfully and professionally challenge a trial court's erroneous orders.  That is precisely the purpose of an appeal.

# CONCLUSION

For the reasons above and the reasons set forth in its opening brief, Kartri respectfully requests that this Court vacate the Appealed Orders, dismiss or transfer the Case Below, and hold that the unregistered trade dress asserted by Appellees is invalid as a matter of law.

Dated:    June 3, 2024

HUGHES HUBBARD & REED LLP

By:  */s/ Patrice P. Jean*
Patrice P. Jean
Emma L. Baratta
Lynn M. Russo

One Battery Park Plaza
New York, New York 10004-1482
Telephone:  +1 (212) 837-6000
Fax:  +1 (212) 422-4726
patrice.jean@hugheshubbard.com

*Attorneys for Defendant-Appellant*
*Kartri Sales Company, Inc.*

30

**CERTIFICATE OF COMPLIANCE
PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 32(g)
AND FEDERAL CIRCUIT RULE 32(b)(3)**

I hereby certify that this brief complies with the type-volume limitation of Federal Circuit Rule 32(b). This brief contains **6722** words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman.

Dated:  June 3, 2024                    Hughes Hubbard & Reed LLP

                                        By:  */s/ Patrice P. Jean*
                                             Patrice P. Jean

                                             One Battery Park Plaza
                                             New York, NY 10004
                                             Tel: (212) 837-6000
                                             patrice.jean@hugheshubbard.com

                                             *Attorneys for Defendant-Appellant*
                                             *Kartri Sales Company, Inc.*